New York Life Ins Co. v. Alexander.

[85 South. 93, In Banc. No. 21112.]

INSURANCE. *Life policy forfeited for failure, to pay irrespective of disability.*

When a life insurance policy provides for a forfeiture of the insurance in case of a failure to pay premium, the policy in case of failure to pay is forfeited, and sickness or insanity will not avoid the forfeiture.

APPEAL from circuit court of Jasper county.
HON. W. H. HUGHES, Judge.

Action by W. H. Alexander, administrator of Julius A. Alexander, deceased, against the New York Life Insurance Company. Judgment for plaintiff, and defendant appeals. Reversed, and cause dismissed.

*Deavours, Hilburn & Deavours,* for appellant.

It is admitted that the August 8, 1918, premium on the policy of insurance sued on, was not paid or tendered when due, and was not paid or tendered at any time thereafter. It is also admitted that the appellant company had no notice or knowledge of any kind or character, of the alleged physical and mental disability of the insured until after his death. It is further admitted that no proof of said alleged disability of the insured was ever made or furnished to the company. It further appears without dispute, that the Jackson office of the appellant company mailed the customary notice to the insured many days before the August 8, 1918, premium was due. It further appears that a son of the insured, Dewit Alexander, a young man of fair intelligence, about twenty-one years of age, had the policy of insurance in his possession, and wrote a letter to the Jackson office of the appellant Company, signing the name of his father, the insured, thereto, asking for certain information, which was by the company promptly furnished, as will appear by reference to the two letters set out in full in the statement of facts. Although this son was of fair intelligence, could read and write, and knew that the August 8, 1918, premium had not been paid, he made no effort to pay the same, and made no effort to notify the company of the alleged disability of his father, or to make proof of the same in any manner.

Appellee seeks to recover in this suit, notwithstanding the fact that the August 8, 1918, premium was never paid or tendered, and notwithstanding the fact that no notice or proof of alleged disability of the insured was ever given to the company until after the death of the insured, on the theory that owing to the alleged disability of the insured, he was not required under the terms of the policy, either to pay the premium on said policy

when due, or to make any proof of his alleged disability.

Adopting the plaintiffs theory of the case, the trial Judge rendered a judgment against the appellant company for the full amount sued for. With all deference to the trial judge, we submit that this position is supported neither by the law, nor by sound reason. After diligent and careful search and investigation of the authorities on this question, we find · that the courts have universally held that the disability of the insured is no excuse for failure to pay the premium, unless in contracts similar to the one at issue in this cause, due and sufficient proof of the disability of the insured has been made and filed in strict accordance with the terms of the policy.

We have not found a Mississippi case directly in point. It seems however, that all the courts, state and federal, that have passed on this question have held in favor of the appellant's contention. 14 Ruling Case Law, page 996; *Hipp* v. *Fidelity Mutual Life Insurance Company,* 128 Ga. 491, 57 S. E. 892, 12 L. R. A., New Series, page 319; *Wheeler* v. *Connecticut Mutual Insurance Company,* 82 N. Y. 543, 37 American Reports, page 596; *Klein* v. *New York Life Insurance Company,* 104 U. S. 88, L. Ed. 662; *Thompson* v. *Knickerbocker Life Insurance Company,* 104 U. S. 252, 26 L. Ed. 767; *Klein* v. *Ins. Co., Ante,* 662; *Howell* v. *N. B. Life Insurance Company,* 44 N. Y. 276, 4 American Reports, 675; *Ruse* v. *The National Life Insurance Company,* 23 N. Y. 516, 518; *Smith* v. *Penn Life Insurance Company,* 11 N. W. C. 295; *Gateman* v. *American Life Insurance Company,* 1 Mo. App. 300; *Capmenter* v. *Central Mutual Life Association,* 68 Iowa, 453, 56 American Reports 855; *Klein* v. *Insurance Company,* 104 U. S. 88; *Thompson* v. *Insurance Company,* 104 U. S. 252.; *Wheeler* v. *Connecticut Mut. Life Ins. Co.,* 82 N. Y. 543.; s. c., 37 Am. Rep. 594; *Hawkshaw* v. *Supreme Lodge K. H.,* 29 Fed. 770; *Grand Lodge A. O. U. W.* v. *Jesse,* 50 Ill. App. 101; *Ingram* v.

*Supreme Council A. L. H.*, 28 N. Y. Week Dig., 320, 14 N. Y. S. R. 600; *Sheridan* v. *Modern Woodmen,* 7 L. R. A. (N. S.) 973, 87 Pac. 127.; *McElhon* v. *Massachusetts Benevolent Association,* 2 App. D. C. 397; *Sleight* v. *Supreme Council, M. T.,* 121 Iowa, 724, 96 N. W. 1100; *Yoe* v. *Benjamin C. Howard Mutual Benevolent Association,* 63 Md. 86; *Curtin* v. *Grand Lodge A. O. U. W.,* 65 Mo. App. 294; 2 Bacon, Benefit Societies and Life Insurance, page 885.; *Whiteside* v. *North American Acc. Ins. Co.,* 200 N. Y. 320; *Wick* v. *Western Union Life Ins. Co.,* 175 Pac. (Wash.) 953; *Sterling* v. *Head Camp, Pacific Jurisdiction, Woodmen of the World,* 80 Pac. (Utah) 375; *Bost* v. *Supreme Council Royal Arcanum,* 92 N. W. (Minn.) 337.

The contract is plain, the disability benefits are only given when the company receives due proof, before default in the payment of the premiums, that the assured has become disabled; that is, at a time when the evidence is accessible to the company so that it can satisfy itself, and know that the insured is disabled.

We respectfully submit that this cause should be reversed and judgment here entered for the appellant.

*T. J. Willis,* for appellee.

The first question presented to this court is: Under the terms and conditions of the contract of insurance in this policy is there a forfeiture of this policy effected by reason of the total and permanent disability of the insured, accompanied by total and complete insanity, or mental incapacity to the extent that the insured could not make proof of his condition any more than if he had been a dead man; whereas, if the total and permanent disability had not been accompanied by insanity and notice of his condition could have been given to the company the policy thereby would have been effectual and the right to recovery complete at the date of his death.

It is contended by appellant, under the authority of a number of cases that sickness and mental and physical incapacity to attend to business is not a sufficient excuse for the nonpayment of a premium. The cases recited and relied on by appellant are not in point in this case and have no bearing in determining the rights and liabilities presented herein. In each of the cases cited the court had under consideration the construction of the contract of insurance where a policy would cease and the contract terminate at a specified time unless renewed by the payment of the premium stipulated therein.

Counsel cited with approval the statement of the court in *Chapter* v. *Central Mutual Life Association,* 66 Iowa, 553, 56 American Reports, 855: ''It is true it was impossible for the assured to perform at the time required therein to perform it; but he could have provided for his performance before hand, and those of his family about him could have performed it for him. The fact that the plaintiff did not know of the existence of the policy before her husband's death does not change the case Prudence and care on the part of the assured would have prompted him to prepare for the payment of the assessment upon the day it became due and to inform his wife of his contract and his obligation to perform it at the time therein prescribed. We reach the conclusion that the facts of the case do not constitute grounds for excusing nonpayment of the contract of the assured and do not present a case of impossibility of performance caused by the act of God.''

The cases cited by appellant in support of its contention and the quotations herebefore made, which is set out by appellant in its brief and relied upon as strongest and most logical enunciation of the law thus relied upon, are not applicable to the case at bar and are easily distinguished therefrom.

In policies of insurance where the continuation of the contract is conditioned upon the payment of the premium, the date of the payment and the amount thereof are certain. The prudence and foresight of an ordinary prudent business man would cause him to prepare for the payments of the premium which are certain as to amount and definte as to the date of payment. Ordinary prudence and foresight would suggest an arrangement for the continuation of the insurance contract by providing for the performance of the condition precedent to its continuation in the event of sickness or disability on the part of the assured to perform.

The insured Julius A. Alexander in entering into the contract under consideration in this cause, did exactly what the court in the Capmeter case, and in that line of authorities to which the case belongs, indicate that he should do. He provided against the forfeiture of his contract of insurance in the event of his total and permanent disability. To provide against a contingency that would lapse his policy in the event of his total and permanent disability he paid an additional premium of four dollars and eighty-eight cents per year or one dollar and twenty-two cents for each one-fourth annual premium for the total and permanent disability benefit in the contract. This contract provides: ''If the insured becomes wholly and permanently disabled before age sixty the payment of premiums will be waived under the conditions contained in section one.''

Section one provides that the premium would be waived if the insured became wholly disabled and incapacitated to engage in any operation for remuneration or profit, and in addition thereto that the insured would be paid the sum equal to one-tenth of the face value of the policy or two hundred dollars per year as long as the said disability continued. The insured paid the sum of one dollar and twenty-two cents each three months for the right and benefit of having his insurance continue in

force and effect and to prevent a forfeiture thereof in case of total and permanent disability.

How was the insured to receive this benefit and what was the benefit contracted to be received in section one, and for which he paid one dollar and twenty-two cents every three months? How was the benefit to be extended him? Was he to receive this benefit for a total and permanent disability; or for having made proof of a total and permanent disability? Did the Insurance Company contract to accept his premium and to extend him a benefit for having made proof of the existence of a fact, or did the contract contemplate the benefit to arise upon the existence of the fact, a total and permanent disability? The Insurance Company admits that the facts entitled the insured to the total and permanent disability benefits which existed, in accordance with the terms and conditions of the contract before and at the time of the forfeiture of the policy for the non-payment of the premium. It denies liability however on the ground that it did not know of the existenie of the facts and that the assured had not communicated the existence of the facts to it. The court found that it was impossible for him to think or act. Appellant contends that the notice was a condition precedent to the enjoyment of the total and permanent disability benefits and that the insured should have anticipated his insanity and have provided for his family or friends, not to pay the premium, but to give notice to the company that he had gone crazy.

The surrender of an insurance policy by the insured who at the time of the surrender is insane to a degree incapacitating him from the transaction of business, and who remains in that condition until the time of his death, is without effect, although the insurer acted in good faith without knowlelge of the insanity. Insanity renders the acts of a person void and excuses a person in such condition from the legal necessity of performing ob-

ligations imposed upon them and necessary for them to perform but for the existence of the infirmity. *Hicks* v. *Northwestern Mutual Life Ins. Co.*, L. R. A. 1915A, page 872.

A construction of the language of the contract of insurance in the light of what was in the contemplation of the parties in entering into the insurance is necessary to determine the liability in this case. In construing the contract it is to be remembered that the language of the policy is that of the company, all the conditions and provisions favorable to the company are to be strictly construed. *Providence Life Ins. Co.* v. *Reutlinger; Traiders Life Ins. Co.* v. *Humphreys*, 109 Ill. App. 246; *Ferguson* v. *Union Mutual Life Ins. Co.*, 72 N. E. 258; *Frink* v. *Brotherhood Accident Co.*, 54 Atl. 176.

The giving of the notice of total and permanent disability provided for in the policy contemplated a physical disability unaccompanied by a mental incapacity, since mental infirmities are not provided against or stipulated in the contract. The rule of construction of contracts of insurance is that a construction is to be avoided that would forfeit the contract. The conditions and provisions of the policy with reference to forfeiture must be strictly construed in favor of the insured and against the company. *Providence Saving Life Ins. Society* v. *Cannon*, 103 Ill. App. 534; *Mutual Benefit Life Ins. Co.* v. *Dum*, 51 S. W. 20; *Hendricks* v. *Mutual Benefit Life Ins. Co.*, 32 S. E. 728; *Stinchcombe* v. *N. Y. Life Ins. Co.*, 80 Pac. 213; *Logan* v. *Providence Saving Life Ins. Society*, 50 S. E. 529; *McMaster* v. *N. Y. Life Ins. Co.*, 183 U. S. 25.

It is clear from an examination of the contract under consideration that the payment of a cash premium was to be waived upon the total and permanent disability of the insured; that the condition precedent to the waiver of the premium was the total and permanent disability of the assured. The notice provided to be given was but

an incident to the performance of the contractual agreement to waive the premium entered into by the insurance company.   The amount of the premium and the date it would fall due was certain.   The insured must anticipate and forestall the contingency by either paying it himself or arranging for it to be paid.   The insurance company and the insured provided against a forfeiture of the policy by contracting for additional consideration to waive the premium on the total and permanent disability of the insured.   The insured could reasonably anticipate the likelihood of a total and permanent disability occurring, since such occurrences are frequent experiences in the lives of men.   Total and permanent mental incapacity or insanity and permanent incapacity or insanity prior to old age are of rare or infrequent occurrences.   Such contingencies do not arise ordinarily in the lives or experiences of men, and may not be contemplated except in unforseen acts of God.   The contingency of the loss of mental faculties in the prime of life are of such rare occurrences and such infrequent acts of vis major that men never contemplate the visitation upon themselves nor provide against such contingency.   Mental powers are lost in old age, and incapacities thereby caused.   This contract however only provides for the benefit of the total and permanent disability prior to the age of sixty.

The agency of God excludes all idea of human agency. The act of God excused the breach of a contract and relieves the party from the performance thereof.   Some courts have held that the expression "act of God" is in fact an inaccurate one and all that is meant is that the accident or contingency was not within the purview of the contract.   *Allen* v. *Baker*, 41 Am. Rep. 444; *Schuller* v. *Kirkpatrick*, 21 Amer. Rep. 62.

It is to be noted that at the time of the alleged forfeiture of the contract of insurance, that the insured had been totally and permanently disabled for more than

sixty days. That under the provisions of the contract that one-sixth of the total and permanent disability bene. fit of two hundred dollars per year had accrued. The only benefits that could accrue to the insured by reason of the total and permanent disability premium that had been paid by him was the waiver of the premium and yet payment of one-sixth of the face value of the policy per year' as long as the condition of disability continued. The amount of the premium due, if it was not to be waived, was twenty-three dollars and ninety-six, cents. The amount due the insured under the total and permanent disability clause was one-sixth of the annual disability payment of two hundred dollars or thirty-three dollars, thirty-three and one-third cents. The insurance company owed the insured at the date the premium, was due money in excess of the amount of money due the insurance company by the assured. The insurance company cannot avoid the payment of the policy for the nonpayment of the premiums when it was due the insured a sum of money in excess of the sum, due it by the insured as premium. *Johnson* v. *Fidelity and Casualty Co. of N. Y.*, 151 N. Y. 593; L. R. A. 1916A, page 475; *Lyon* v. *Travelers' Ins. Co.*, 54 Am. Rep. 354.

We submit to the court that the learned circuit judge was correct in his finding of fact and in his application of the law and the judgment of the court below should be affirmed.

COOK, J., delivered the opinion of the court.

On the 5th day of June, 1917, appellant, New York Life Insurance Company, issued its policy for two thousand dollars to one Julius A. Alexander. On page 1 of said policy the following provision occurs:

"This contract made in consideration of the payment in advance of the sum of twenty-three dollars and ninety-six cents, the receipt of which is hereby acknowl-

edged, constituting the first premium and maintaining this policy to the eighth day of August, 1917, and a like sum on said date and every three calendar months thereafter during the life of the insured.''

Under the heading, ''Payment of Premiums,'' the following provision occurs:

''The payment of the premium shall not maintain the policy in force beyond the date when the next premium shall be due, except as to the benefits provided herein after default in premium payment.''

The policy under the heading ''Surrender Values,'' on the second page, provides that there would be no nonforfeiture benefits available under the policy upon its lapse for nonpayment of premiums until after three full years' premiums had been paid. It is admitted that in this case three full years' premiums had not been paid before default in the payment of the premium, and therefore it necessarily follows according to the contract that upon the lapse of the policy in question all insurance benefits thereunder ceased.

All the premiums on said policy were paid when due as provided therein, down to the premium of twenty-three dollars and ninety-six cents, due August 8, 1918, but the August 8, 1918, premium never was paid or tendered to the company, nor was any premium on said policy paid, or tendered to the company, that became due after May 8, 1918.

The policy contains also the following provisions:

''Whenever the company receives due proof before default in the payment of premium, that the insured, before the anniversary of the policy on which the insured's age at nearest birthday is sixty years, and subsequent to the delivery hereof, has become wholly disabled by bodily injury or disease, so that he is and will be presumably, thereby permanently and continuously prevented from engaging in any occupation whatsoever for remuneration or profit, and that such disability has

then existed for not less than sixty days—the permanent loss of the sight of both eyes, or the severance of both hands or both feet, or of one' entire hand and one entire foot, to be considered a total and permanent disability without prejudice to other causes of disability—then,

"1.   Waiver of Premium.   Commencing with the anniversary of the policy next succeeding the receipt of such proof, the company will on each anniversary, waive payment of the premium for the ensuing insurance year, and, in any settlement of the policy, the company will not deduct the premium so waived.   The loan and surrender values provided for under sections 3 and 4, shall be calculated on the basis employed in said sections, the same as if the waived premiums had been paid as they became due.

"3.   Recovery from Disability.   The company may at any time, and from time to time, but not oftener than once a year, demand due proof of such continued disability, and upon failure to furnish such proof, or, if it appears that the insured is no longer wholly disabled as aforesaid,  no further premiums shall be waived,  nor income payments made."

About the 1st of June, 1918, the insured, Mr. Alexander, was stricken with appoplexy, and remained unconscious for about forty-eight hours.   Shortly thereafter he was taken to the sanitarium at Newton, Miss., where he remained for about thirty days.   His condition while at the sanitarium can be best described by quoting from the evidence given by Dr. W. G. Gill, a witness for the plaintiff:

"Q.   Was his mind clear and lucid during the time? A. Only at times; at times he was, and at times he was not.

"Q.   So he at times could understand things, appreciate things just like the average man, Doctor?
"A.   Yes, at times he could answer questions, and ask questions, and ask what he wanted; at times, yes.

"Q. Or he could have mentioned a simple business matter, not a complicated matter, I mean an ordinary business matter, he could have done that, could he not? A. Well, I suppose he could."

It appears some time in June, 1918, Mr. Alexander left the Newton Sanitarium, and returned home, at Montrose, Miss. From that time until his death on September 22, 1918, he was in such physical condition that he could walk around, talk with the members of his family and his friends about the ordinary affairs of life; at times his mind would appear clear and his conversatin wuld be rational and intelligent, and at other times not. However, he never regained his physical or mental strength sufficiently to engage in business.

The record shows that a premium on said policy was due on August 8, 1918, and that this premium was never paid or tendered to the company; that the policy provided for thirty days of grace within which to pay said premium; that said premium was never paid, or tendered to the company during said period of grace, or at any other time.

It was further shown that on July 13, 1918, the Jackson office of the New York Life Insurance Company mailed to the insured, Julius A. Alexander, at Montrose, Miss., the usual and customary notice of premium due on August 8, 1918, on the policy in question.

On August 31, 1918, the following letter was received at the Jackson, Miss., branch office of the New York Life Insurance Company:

"Montrose, Mississippi, 8—29—18.

"Gentlemen: Have you mailed me a statement of my policy of third payment 1918 (No. 6150580). If you have I have never received the same.

"Yours very truly,        J. A. Alexander."

On the same day the following letter was written and mailed to Mr. Alexander, in reply to the above:

"August 31, 1918.

"Mr. Julius A. Alexander, Montrose, Mississippi—
Dear Sir: Re Policy No. 6150580. Replying to your
letter of the 29th instant, I beg to advise that a quarter-
ly premium of twenty-three dollars and ninety-six cents
was due under your above numbered policy on August
8, 1918. If your check is mailed on or before September
8th, it will be accepted.

"Yours very truly,

"H. H. Graham, Cashier."

To explain this letter the plaintiff introduced as a
witness Dewitt Alexander, a young man about twenty-
one years of age, the son of Julius A. Alexander, de-
ceased, the insured. This young man testified that the
letter purporting to have been written by J. A. Alexan-
der, set out above, was in fact written by the witness,
Dewitt Alexander; that in writing the letter he had
the policy of insurance in his possession, and referred
to the policy when writing the letter, in order to as-
certain the number of the same, which, it will be observed,
he sets out in his letter; that notwithstanding the fact
that he could read and write, and was a young man of
fair intelligence, he made no further attempt to ascer-
tain when the premium was due, or to pay the same
when due. It is further shown that he failed altogether
to inform the company of his father's condition, or to
make any proof of his alleged disability.

It was further shown that appellant, New York Life
Insurance Company, had no notice or knowledge of any
kind of the alleged disability of the insured, until several
days after the death of the insured; that no proof of
any kind of the alleged disability of the insured was
ever made or furnished to the company; and that the
first knowledge the company had of the alleged disabil-
ity of the insured was after the death of the insured,
when the brother of the insured called at the Jackson

office of the company, and asked for blanks to make proof of his brother's death.

The court rendered a judgment in favor of the plaintiff, for the amount sued for, and the defendant has appealed.

The authorities seem to be against the view adopted by the trial court. The policy sued on was and is the contract between the company and the insured. The company agreed to pay a certain sum upon the reception of the proof provided for by the contract of insurance. As was said by the supreme court of *New York in Wheeler* v. *Connecticut Mutual Ins. Co.,* 82 N. Y. 550, 37 Am. Rep. 597.

"While as a general rule, where the performance of a duty created by law is prevented by inevitable accident, without the fault of a party, the default will be excused, yet when a person by express contract engaged absolutely to do an act not impossible or unlawful at the time, neither inevitable accident, nor other unforeseen contingency not within his control, will excuse him, for the reason that he might have provided against them by his contract."

The supreme court of the United States in *Thompson* v. *Ins. Co.,* 104 U. S. 252, 26 L. Ed., 765, had this to say:

"In the second replication the excuse set up is that before the note fell due Thompson became sick and mentally and physically incapable of attending to business until his death on the 3d day of November, 1874, and that the plaintiff was ignorant of the outstanding note. We have lately held; in the case of *Klein* v. *Ins. Co.* ('Ante,* 662), decided at the present term, that sickness or incapacity is no ground for avoiding the forfeiture of a life policy, or for granting relief in equity against forfeiture. The rule may, in many cases, be a hard one; but it strictly follows from the position that the time of payment of premium is material in this con-

tract, as was decided in the case of *New York Life Ins. Co.* v. *Statham,* 93 U. S. 24, 23 L. Ed. 789. Prompt payment and regular interest constitute the life and soul of the life insurance business; and the sentiment long prevailed that it could not be carried on without the abiltiy to impose stringent conditions for delinquency. More liberal views have obtained on this subject in recent years, and a wiser policy now often provides express modes of avoiding the odious result of forfeiture. The law, however, has not been changed, and if a forfeiture is provided for in case of nonpayment at the day, the courts cannot grant relief against it. The insurer may waive it, or may by his conduct lose his right to enforce it; but that is all.''

Cases might be multiplied holding that the contract controls. It is our opinion that the verdict was in direct opposition to the provisions of the terms of the contract. The proof of disability was never made, and the judgment of the court below will be reversed, and the cause dismissed.

*Reversed and dismissed.*