## BROTHERHOOD OF RAILROAD TRAINMEN v. BRIDGES.

(Division A. Nov. 28, 1932.)

[144 So. 554. No. 30273.]

W. L. Pack, Jr., of New Orleans, Louisiana, and Tom McGrath, of Cleveland, Ohio, for appellant.

358

**F. B. Collins,** of Laurel, for appellee.

**Cook, J.,** delivered the opinion of the court.

This is an appeal from a decree of the chancery court of the second district of Jones county, ordering the readmission of the appellee, William E. Bridges, as a beneficiary member of appellant, Brotherhood of Railroad Trainmen, and the reinstatement of appellee's certifi-

cate of insurance; appellee having been previously expelled for the nonpayment of dues.

The bill of complaint alleged that the appellee became a member of the appellant in 1902, and that there was issued to him at that time a certificate of insurance in the face amount of five hundred dollars, which was increased in 1925 to one thousand, eight hundred seventy-five dollars; that appellee paid, before they were due, all dues and assessments required of him until July, 1931; that, under the provisions of the constitution and by-laws of the order, dues must be paid monthly in advance, on or before the 1st day of each month; that he failed to pay his July, 1931, dues on or before the 1st day of July, but that he paid said dues on the 15th day of July, 1931, to the treasurer of the local lodge of appellant who was authorized to collect them; and that said dues were duly remitted to the treasurer of the appellant, but it refused to accept them.

The bill further averred that, according to the provisions of his certificate of insurance and the constitution and by-laws of appellant, the appellee had a right, upon filing the required application and paying the dues in arrears and one dollar additional, to have his certificate of insurance reinstated; that he made such application and tendered all such dues and fees before the expiration of the month of July, 1931; that he complied with all other requirements of said certificate of insurance and the constitution and by-laws in an effort to have his insurance reinstated; but that, contrary to its constitution and by-laws, the appellant arbitrarily and illegally refused to reinstate said certificate of insurance. Attached to the bill of complaint were certain exhibits which will be referred to in the statement of the facts material to the issues presented. The prayer of the bill is that a decree be granted reinstating the certificate of insurance and restoring appellee to his original status

and to all his legal and equitable rights under the policy of insurance.

The appellant answered the bill of complaint, setting forth in detail the grounds upon which appellee's readmission was denied, and the provisions of the constitution and by-laws applicable. Upon the trial of the cause, the constitution of the order was offered in evidence, and the provisions thereof which bear upon and control in the matter of the readmission of members who have been expelled for the nonpayment of dues are the following:

"Sec. 68. Any beneficiary member in good standing who shall . . . suffer the complete and permanent loss of sight of one or both eyes, or upon becoming seventy (70) years of age, shall be considered totally and permanently disabled, but not otherwise, and shall thereby be entitled to receive, upon furnishing sufficient and satisfactory proofs of such total and permanent disability, the full amount of this beneficiary certificate."

"Sec. 72. A brother petitioning for a total and permanent disability claim under section 68, shall not be exempt from Grand and Subordinate lodge dues and assessments until the claim has been regularly allowed by the General Secretary and Treasurer, or if disallowed by that officer, until it has been regularly passed upon by the Beneficiary Board. His standing shall be kept good by his lodge without intermission provided he has complied with Section 131, Subordinate Lodge Constitution; otherwise the beneficiary certificate of the said member shall be cancelled. Provided, that all beneficiary assessments paid after the month in which specified computation or severance occurred or after the month in which the permanent loss of sight of one or both eyes occurred (as defined by Section 68) shall be refunded."

"Sec. 137. No member shall be entitled to any of the benefits of the Brotherhood nor to any rights, title or interest in or to the beneficiary fund, unless his Grand

and Subordinate dues and all assessments are paid within the time specified in the Constitution; otherwise his beneficiary certificate becomes null and void.''

''Sec. 141. Any member of this lodge failing or refusing to pay his dues and assessments, as required by Section 129, becomes expelled without any notice or further action whatsoever, and at that instant his beneficiary certificate shall be void, and all rights and benefits of beneficiary membership shall cease and be determined.''

''Sec. 151. A member expelled for nonpayment of dues may be readmitted upon making application on form provided by the General Secretary and Treasurer for that purpose, the payment of all arrearages up to date of expulsion, current month's dues and assessments, and a proposition fee of one dollar. This proposition shall be considered and acted upon as provided in laws governing applications for membership by initiation, except that where less than two calendar months have elapsed a medical examiner's certificate shall not be required, unless in the judgment of the General Secretary and Treasurer, additional information as to the applicant's physical condition is necessary. Beneficiary members becoming expelled for nonpayment of dues, and readmitted after properly qualifying under this section, will again become beneficiary members, although more than forty-five years of age.''

The proof shows that in 1924 or 1925 the appellee, being then the holder of the insurance certificate in question, made application for the payment of the amount of the certificate on the ground that he had totally lost the sight of one eye, and that payment was declined for the reason that the proof offered in support of his claim of total disability showed that he could count a person's fingers at a distance of four feet, and, therefore, had not totally lost the sight of the eye. The appellee made no further claim for disability benefits before he was

expelled from the order and his certificate of insurance canceled for the nonpayment of dues.

When he applied for reinstatement of his membership and certificate of insurance in July, 1931, without a medical examiner's certificate being attached to the application, appellant's secretary and treasurer, having before him the record of appellee's former application for payment of his certificate, as was his right under section 151 of the constitution, called upon the appellee for additional information as to his physical condition, and required the filing of an application on prescribed form 131, which included a medical examiner's certificate. Upon the filing of this application, the medical examiner's certificate, as well as the proof offered at the trial of this cause, showed total blindness of one eye for all practical purposes, and, as a consequence, the application was denied. The general secretary and treasurer of the order, in assigning the reason for the denial of the application, testified as follows:

"Mr. Bridges was not readmitted to beneficiary membership because of the fact that his application showed that he had no vision in his left eye. If this were true the laws of the Brotherhood, particularly Section 68 of the Constitution, at that time provided for the payment of the face of the certificate for the total and complete loss of vision of one eye, and Mr. Bridges would immediately have been entitled to have collected his insurance, if it could be proven to be true. He was considered for that reason, to be an exceptionally bad insurance risk, and was, therefore, not readmitted as a beneficiary member, but was advised that he could be readmitted as a non-beneficiary member. As indicated by the provision of the Constitution quoted above, an applicant would not be eligible to admission to the Brotherhood if he was forty-five years of age or over under ordinary circumstances, but this provision does not apply to cases where members have been expelled for

nonpayment of dues, and make application for readmission within two calendar months. In such cases only the question of his physical condition enters into his eligibility for readmission. In this case very evidently the fact that Mr. Bridges was making an application for readmission within the sixty day period was overlooked, and the reason for his rejection was improperly and inadvertently assigned as being over age. The secretary of Mr. Bridges' lodge was notified to that effect on August 12, 1931, but when the error was discovered by Mr. McLeod and called to the attention of the undersigned the correct information was given respecting the cause of his rejection in the letter dated August 19, 1931. The fact is that the question of age in this particular case had, and has, no bearing on the matter, and the impairment of his vision was, and is, the sole cause of his rejection.''

In explaining the rules and constitutional provisions governing the readmission of expelled members of the brotherhood, its general secretary and treasurer also testified as follows:

''When a member is expelled for nonpayment of dues he may make application for readmission at any time. If such application is made within two calendar months after the date of expulsion, it is required to be made on a form, a copy of which is hereto attached, marked 'Exhibit A' and by this reference made a part of this deposition. If for reasons disclosed in this application for readmission, or because of any knowledge possessed by the General Secretary and Treasurer respecting the applicant's physical condition, it is deemed necessary to have the member file a new and complete application for a beneficiary certificate, this may be done in the discretion of the General Secretary and Treasurer. The foregoing procedure is governed by Section 151 of the Constitution and General Rules of the Brotherhood.

. . . Particular attention is called to the following words of Section 151: 'A member expelled for non-payment of dues may be readmitted upon making application on Form provided by the General Secretary and Treasurer for that purpose, the payment of all arrearages up to date of expulsion, current month's dues and assessments, and a proposition fee of one dollar. This proposition shall be considered and acted upon as provided in laws governing applications for membership by initiation, except that where less than two calendar months have elapsed a medical examiner's certificate shall not be required, unless in the judgment of the General Secretary and Treasurer additional information as to the applicant's physical condition is necessary.' It will be noted that it refers to the proposition for readmission as being 'considered and acted upon as provided in laws governing applications for membership by initiation.' The laws governing application for admission by initiation are found in Sections 120 and 125. In the case of Mr. Bridges an attempt was made by the treasurer of his subordinate lodge to effect his readmission to the Brotherhood without requiring his to sign the application for readmission. (Form 138). Because of the fact that Mr. Bridges had previously filed an application for the payment of his insurance the General Secretary and Treasurer required him to furnish a medical examiner's certificate, which certificate on its face disclosed that Mr. Bridges had impaired vision, and for that reason, under the laws of the Brotherhood, could not be readmitted.''

The certificate of insurance provided on the face thereof that it was issued upon the express condition that the insured should comply with the constitution and general rules and regulations then in force or which might thereafter be adopted by the brotherhood, and that he pay all dues and assessments imposed upon him within the time specified by the constitution and general rules;

and further that ''any failure to make such payments of either grand or subordinate lodge dues, or any general or special assessments referred to, shall at once forfeit any and all rights hereunder, and this certificate shall become null and void without notice to the assured; nor shall any payment by or for the assured of either dues or assessments by the subordinate lodge or any officer thereof after such forfeiture revive its certificate or confer rights hereunder except by readmission in two calendar months after the date of expulsion in accordance with the provisions of the constitution and general laws.''

It will thus be noted that both the constitution of the brotherhood and the beneficiary certificate expressly provided that a failure to pay either grand or subordinate lodge dues and all assessments within the time specified by the constitution would at once forfeit any and all rights under the beneficiary certificate and render it null and void, and these provisions have been, by this court, repeatedly held to be reasonable, valid, and enforceable. In Odd Fellows Benefit Association v. Smith, 101 Miss. 332, 58 So. 100, and Sovereign Camp, W. O. W., v. Hynde, 134 Miss. 705, 99 So. 259, the court, in construing similar sections of the constitutions of the fraternal benefit societies there involved, held that the failure to pay one month's dues or assessment rendered the benefit certificate void. To the same effect are the cases of New York Life Insurance Co. v. Alexander, 122 Miss. 813, 85 So. 93, 15 A. L. R. 314, and the Independent Order of Sons & Daughters of Jacob v. Enoch, 108 Miss. 302, 66 So. 744.

It is admitted—in fact, it is expressly averred in the bill of complaint filed herein—that the appellee failed to pay his July, 1931, dues within the time required by the constitution; and, consequently, upon said default, his membership in the order ceased and his insurance certificate became at once void. After the date of appellee's expulsion for nonpayment of dues, he had the

right to apply for readmission upon the terms and conditions prescribed in section 151 of the constitution of the Brotherhood, but by the express provision of that section of the constitution, when he applied for readmission, he stood on exactly the same basis as though he had never been a member of the brotherhood, with two exceptions or qualifications set forth in said section. These exceptions are, first, that, if he sought readmission within two calendar months after the date of his expulsion, a medical examiner's certificate would not be required, "unless in the judgment of the general secretary and treasurer, additional information as to the applicant's physical condition was necessary;" and, second, that, if he otherwise qualified under section 151 for readmission, age in excess of forty-five years would not prevent him from again becoming a beneficiary member of the order.

Upon the filing of appellee's application for reinstatement after his expulsion for the nonpayment of dues, the appellant's general secretary and treasurer, in the exercise of his judgment, as authorized by said section 151 of the constitution, required additional information as to the applicant's physical condition, including a medical examiner's certificate; and, in view of the fact that appellee had previously applied for the payment of the amount of his certificate on account of an alleged serious impairment of the sight of one of his eyes, which then appeared to be progressive, it cannot be said the requirement of this additional information and medical certificate was an arbitrary and unreasonable exercise of judgment on the part of said secretary and treasurer. Upon the filing of this additional information and medical examiner's certificate, it appeared on the face thereof that the applicant had practically no vision in the left eye, and therefore was not a proper insurable risk for the class of insurance issued by the appellant, that is, insurance against the complete and permanent loss

of the sight of one or both eyes. This being true, the appellant was within its rights in rejecting the appellee's application for readmission, unless an obligation to reinstate appellee's insurance may be sustained upon some theory of vested right therein on account of the fact that appellee's disability occurred before, and existed at the time of, the forfeiture.

The chancellor's opinion upholding the right of reinstatement seems to proceed upon the theory that, since the appellee had lost the sight of his eye for all practical purposes prior to the date of his expulsion, he had certain accrued rights against the order which would prevent a forfeiture, although no claim whatever had been submitted by him prior to his default in the payment of dues, or, in other words, that the mere existence of the disability at the time of default would operate to prevent a forfeiture, regardless of whether any claim or proof had been submitted to the order. This theory is contrary to the express provision of the constitution of the order, as well as the decisions of this court.

Section 137 of the constitution provides that no member shall be entitled to any of the benefits of the brotherhood, or to any rights, title or interest in or to the beneficiary fund, unless his grand and subordinate dues and all assessments are paid within the time specified in the constitution; otherwise his beneficiary certificate becomes null and void; while section 72 of the constitution requires that a member petitioning for a total and permanent disability claim, as defined in section 68 of the constitution, shall keep all grand and subordinate lodge dues and assessments paid until the claim has been regularly allowed by the general secretary and treasurer, or, if disallowed, by that offier, until it has been regularly passed upon by the beneficiary board; otherwise the beneficiary certificate of such member shall be canceled. The appellee failed to comply with

these provisions, and thereupon the forfeiture was declared.

In the case of New York Life Insurance Co. v. Alexander, supra, the court had under consideration the question of whether, under a life insurance policy providing for the waiver of premiums in the event of total disability, the sickness or insanity of the insured would prevent the forfeiture of the insurance, where no proof of his disability had been submitted. The evidence showed a total disability by reason of sickness and insanity which prevented the insured from submitting proof thereof, but the court held that this total incapacity of the insured did not avoid the forfeiture of the policy.

In Berry v. Life Insurance Co. (Miss.), 142 So. 445, the policy provided for the waiver of further premiums and the payment of a disability benefit of fifty dollars a month during any total disability which would prevent the insured from again engaging in any gainful occupation, upon the insured furnishing satisfactory proof of such disability. The insured became insane while the policy was in full force and effect, and therefore totally disabled to follow any gainful occupation, but, on account of his insanity, he was unable to make proof of his disability, and likewise failed to pay the accruing premiums. Upon these facts, the court was strongly urged to overrule the Alexander Case, supra, but declined to do so, and held that the total disability, although occurring while the policy was in full force and effect, did not prevent a forfeiture for the nonpayment of premiums where the claim was not presented and perfected before default in such payment.

We fully recognize the fact that this case is one of great hardship, and the appellee's plight appeals strongly to our sympathy. For nearly thirty years he maintained his membership in the order by the payment of dues and assessments, and then, for some reason not made clear by

the record, and at a time when his disability had already occurred, he permitted a forfeiture of his insurance by reason of his failure to pay one month's dues or assessments. However, the contract between the parties is so written as to authorize and require such forfeiture, and it must be construed and enforced by the courts as written.

The decree of the court below will therefore be reversed, and a decree will be entered here dismissing the appellee's bill of complaint.

Reversed, and decree for appellant.