## RELIANCE LIFE INS. CO. v. CASSITY et al.

(Division B. Oct. 14, 1935. Suggestion of Error Overruled Nov. 11, 1935.)

[163 So. 508. No. 31820.]

Wells, Wells & Lipscomb, of Jackson, for appellant.

**O. B. Triplett, Jr.,** of Forest, for appellees.

Argued orally by **Hubert Lipscomb**, for appellant, and by **O. B. Triplett, Jr.**, for appellee.

**Ethridge, P. J.**, delivered the opinion of the court.

Mrs. Dorothy Cassity brought suit in the circuit court of Scott county against the Reliance Life Insurance Company on behalf of herself and a minor child upon two policies of insurance, each for five thousand dollars, dated March 15, 1924, issued by the appellant to Allen D. Cassity, and containing provisions for benefits in case of total disability, reading as follows:

''If the insured, after one full year's premium has been paid on this policy and before a default in the payment of any subsequent premium or within sixty days after default, shall furnish proof satisfactory to the company that while this policy is in force without default he has become totally and permanently disabled for life by bodily injury or disease, the company will grant the following benefits:

''(1) Waiver of premium. Commencing with the anniversary of the policy next succeeding the receipt of such proof, The Company will on each anniversary waive payment of the premium for the ensuing insurance year, and, in any settlement of the policy, the Company will not deduct the premiums so waived. In such event, the cash, loan and surrender values shall increase from year to year in like manner as if the premiums had been regularly and duly paid by the insured.

"(2) Installment payments. Beginning immediately on receipt of such proof, the Company will pay to the insured a monthly income of one per cent of the face amount of the policy during the period of total and permanent disability until the death of the Insured. When the policy becomes a claim by death, or matures as an endowment, the full face value of the policy shall be payable in accordance with its terms, less any existing indebtedness, without any deduction for income payments.

"B. If the disability occurs after the anniversary of the policy nearest to the rated age of sixty years.

"(1) Waiver of premium. Commencing with the anniversary of the policy next succeeding the receipt of such proof, the Company will on each anniversary waive payment of the premium for the ensuing insurance year, and thereupon the face of the policy will be reduced by the amount of each premium so waived and any loan and nonforfeiture values shall be based upon the amount of insurance thus reduced.

"Definition of disability. Disability will be deemed to be total when it is of such an extent that the Insured is prevented thereby from engaging in any occupation or performing any work for compensation or financial gain, and such total disability will be presumed to be permanent when it is present and has existed continuously for not less than ninety days. Without prejudice to any other cause of disability the entire and irrevocable loss of the sight of both eyes, or the severance of both hands at or above the wrists, or of both feet at or above the ankles, or of one entire hand at or above the wrist, and one entire foot at or above the ankle, will be considered as total and permanent disability.

"Recovery from disability. If the Company accepts proof of disability under this policy, it shall have the right, at any time thereafter, but not more frequently than once a year, to require proof of the continuance of

such disability, and if the insured shall fail to furnish such proof, or if it appears at any time that the insured has become able to engage in any occupation whatsoever for remuneration or profit, no further premiums shall be waived, and no further income payments shall be made hereunder on account of such disability.''

On or about September 1, 1932, the policies having remained in force during said period, with a loan procured on each, Allen D. Cassity went to the office of the Jackson, Mississippi, agency which had issued the policies, for the purpose of propounding a claim of disability thereunder. He had been sick since about June 20, 1932, and had been unable to work, having had malaria and also a certain rectal trouble, and, in fact having tuberculosis, although he did not know it at the time. He discussed with the cashier of the Jackson agency his purpose of filing a claim for disability, and had certain conversations in regard thereto. The cashier of the Jackson agency wrote the home office of the Reliance Life Insurance Company at Pittsburgh, Pennsylvania, as follows:

''Mr. Cassity was in our office and advised us that he had been disabled for fourteen weeks and that at present, he is still disabled and may continue so for several months longer. Therefore he requests that you supply him with blanks for filing claim for total and permanent disability.''

The assistant claim examiner of the home office, on September 7, 1932, replied to the above letter as follows:

''We are in receipt of your letter of September 1st in which you report contemplated claim for disability benefits under the above numbered policies. However, before giving the claim the necessary consideration, we must request that you advise us of the nature of the insured's disability, the date of commencement of same, and the name and address of the physician who is treating him. Upon receipt of the desired information, the claim will be given every possible consideration.''

The cashier of the Jackson agency testified that upon receipt of this letter he communicated with Cassity with reference thereto, and requested the desired information, and never received a reply to his inquiry, nor was the requested data furnished. The cashier wrote to the home office that Mr. Cassity had decided not to file a claim—that he had read his policy and concluded that he was not entitled thereto, and the cashier testified to the same effect.

Cassity continued to pay the premiums for several months after this application for blanks, and then ceased, and on June 20, 1934, he died. After his death, his father knowing that he had some insurance, sought the cashier for information with reference thereto, and as to the condition of the policies, and subsequently the attorney representing the appellees in this suit, together with the former agent of the Reliance Life Insurance Company, who solicited and procured an application, had an interview with the cashier of the Jackson office in reference thereto.

It appeared from the evidence that the cashier of the local office was the proper person for the policyholders to contact if they desired to file claims for benefits under policies. We quote from the testimony as follows:

"Q. State whether or not the cashier at the Jackson, Mississippi, agency of the Reliance Life Insurance Company was the person who customarily did contact with and treat with persons desiring of filing claims for any of the benefits contained in the policy? (Objected to, ruling reserved.) A. It was.

"Q. State whether or not the cashier customarily would give information and such facts as were in his possession to any person interested in a policy of insurance that had been issued by the Reliance Life Insurance Company, especially by the Jackson, Mississippi, agency? A. They did.

"Q. Would such information also be given customarily by such cashier to attorneys representing parties interested in this manner? A. It would.

"Q. State whether or not this action or those actions on the part of the cashiers of the Jackson, Mississippi, agency were facts that were known to the home office of the Reliance Life Insurance Company? (Objected to and objection overruled.) A. I am sure that the answer is 'yes.' The fact that the cashier did it and held his job with the Reliance Life Insurance Company is positive proof to me that the home office knew and approved it. You see the cashier was the contact man with the public. A man would go in there and the cashier is the first man he would see. If he wrote in there, about anything pertaining to his policy, the cashier answered it, and if he came in to see about his policy, he came in looking for the cashier, because his name was signed to the letter. Of course, I didn't see the correspondence between the cashier and the Reliance Life Insurance Company, nor did I see a contract if there was one. I don't know what the cashier was paid, but the fact that he did those things, and did them efficiently and happily, and held his job, the Reliance Life Insurance Company must have known and approved.

"Q. State whether or not it was done year in and year out? A. Continuously throughout my seven years by the lamented Sam Thompson, and by Mr. Morgan who succeeded him.

"Q. In December, 1934, when you had a conversation or when we had a conversation with Mr. Morgan in Jackson, I will ask you to state whether or not Mr. Allen D. Cassity—whether or not Mr. Morgan stated that Mr. Allen D. Cassity did or did not come to his office for the purpose of filing a claim for total and permanent disability? A. He said he did come for that purpose.

"Q. When did he say that he came? A. It was in the summer of 1932, I believe, sometime in the summer.

"Q. What did he say that Mr. Cassity came to do? A. Came to file a claim for total and permanent disability.

"Q. State whether or not Mr. Morgan stated to you and to me as to whether or not he advised Mr. Cassity at the time with regard to the requirements of the Reliance Life Insurance Company in regard to the amount of proof necessary to establish claim for total and permanent disability. (Objections, ruling reserved.) A. He did, and he went ahead to state that a great many people who came in to make claims did not have grounds for claims, and in order to qualify the matter and clarify the matter in the claimant's mind, that he always explained to them the benefits under the policy, and what they would have to prove in order to qualify for the benefits. He stated that he explained to him that under the provisions of the policy he would have to be totally disabled for ninety days, and at the end of the ninety days be in such condition that he would presumably be disabled for life. When he made this statement, I told him that I had to differ with him, that the terms of that particular policy—(Objections.)

"Q. Just let it be eliminated. Mr. Gainey, state also what Mr. Morgan at that time said, if anything, that he told Cassity would be required by the company in order for him to establish proof of total disability. A. He stated that he told him that he would have to be totally disabled, contemplated that he could not do any work of any kind, and that during those three months' period required to establish his total disability, that he hadn't done any work of any kind, and that his condition would have to be such as presumably he would never be well again. Then he said that Mr. Cassity said, 'Well, I hope to be well again,' and indicated that he would not try to make proof to the effect that he would never be well again, but that he hoped he would be well. Then he told him to go away and write him a letter telling him about

the case and giving him a history of the case and send him that letter."

It appeared from the evidence that Cassity had, during the ninety days, been to his place of business on a number of days staying there only a short time, he and his father being a partnership in the paint business.

It also appeared that one of the physicians who treated Cassity discovered his rectal troubles, and that a fistula existed, and advised him to be thoroughly examined and to have an operation, but that Cassity never returned for the operation. At the time, one of the physicians suspected that Cassity was afflicted with tuberculosis. At a later date, Cassity secured some employment, for a short time, with some relief agency, and earned seventy-five to one hundred dollars a month, but was forced to abandon same on account of his physical condition. He was then examined in a hospital by X-rays which disclosed that he had a very serious and hopeless condition, having tuberculosis, and that his lungs were practically gone on account of the ravages of the disease, and he died, as stated, on June 20, 1934.

A physician testified that the rectal trouble and the fistula were always caused by some wasting disease, and that generally there is a suspicion of tuberculosis when such conditions appear. One of the physicians who treated Cassity prior to his hospital examination which revealed tuberculosis suspected it and suggested an examination by X-ray, which was not done at the time. Had this been done it would certainly have disclosed tuberculosis, since the physicians who examined the X-ray pictures testified that, in their opinion, such condition had existed from two and one-half to three years.

When the evidence for the plaintiff was closed, the appellant made a motion to have same excluded, and a verdict directed for the appellant, and also requested a peremptory instruction. This was based upon the theory that the deceased had failed to file proof of total

disability with the company, and was, therefore, within the principles announced in Berry v. Lamar Life Ins. Co., 165 Miss. 405, 142 So. 445, 145 So. 887; N. Y. Life Ins. Co. v. Alexander, 122 Miss. 813, 85 So. 93, 15 A. L. R. 314.

We are of the opinion that the case at bar is not controlled by said cases, and others of similar import. The proof of both the appellant and the appellee showed that the cashier of the Jackson office had authority to transmit applications for benefits under policies issued by the company in this state to the home office. It is true that the cashier did not pass upon the sufficiency of the proof to establish liability, but he was authorized to assist policyholders in preparing applications. It was his duty to transmit them to the home office, and to advise policyholders as to what their rights were under the policies, and what proof was necessary for them to furnish to the company in order to sustain their claims; and, as stated by the company's former agent, frequently claims were adjusted and disabilities paid, although in the opinion of the agent of the company they were not strictly bound thereby. In other words, the cashier of the local office was an agent for the company for receiving applications to be transmitted to the home office. That being true, the cashier of the Jackson office was the agent of the company or its alter ego, under section 5196, Code 1930, and the cases there cited and Aetna Ins. Company v. Lester, 170 Miss. 353, 154 So. 706.

In Mutual Life Ins. Co. v. Vaughn, 125 Miss. 369, 88 So. 11, it was held that delivery of a policy by an agent, in violation of instructions to secure medical certificates, was the act of the insurer.

In Hartford Fire Ins. Co. v. Clark, 154 Miss. 418, 419, 122 So. 551, it was held that ordinary knowledge acquired by an agent in the scope of his authority is imputed to the insurer.

In Lamar Life Ins. Co. v. Kemp, 154 Miss. 890, 891, 124 So. 62, it was held that the act of insurer's agent in delivering a policy without collecting the first premium was the act of the insurer, notwithstanding the provision in the application for insurance and in the policy to the contrary. See, also, Interstate Life & Accident Company v. Ruble, 160 Miss. 206, 133 So. 223.

The cashier of the Jackson office, in his conversations with the deceased, represented to him that in order to secure the benefits he was applying for, it would be necessary for him to prove that he had done no work during ninety days, and that at the end of the ninety days his physical condition would have to be such as that, presumably, he would be forever disabled, and prevented from performing any gainful labor. This was misleading, and was sufficient to convince the deceased that if that statement was true he need not apply because he was neither absolutely helpless nor hopeless. He hoped to be in a better condition at some time, and because of his not being utterly helpless and hopeless, he had no right to the benefits under the policies.

The interpretation placed upon these provisions by this and other courts is not as stated by the cashier of the Jackson office. In Mutual Ben. Health & Accident Ass'n v. Mathis, 169 Miss. 187, 142 So. 494, it was held that the "insured under health policy is 'totally disabled,' if his illness prevents him from doing the substantial acts required of him in his business, or if his physical condition is such that, in order to effect a cure or prolongation of life, common care and prudence require that he cease all work." See, also, Metropolitan Casualty Ins. Co. v. Cato, 113 Miss. 283, 74 So. 114; Equitable Life Assurance Society v. Serio, 155 Miss. 515, 124 So. 485, and Metropolitan Life Ins. Co. v. Lambert, 157 Miss. 759, 128 So. 750.

Had the cashier, the agent of the appellant, truly disclosed to Cassity the proof of disability required by

law to substantiate his claim or right in regard to his disability, he would, doubtless, have procured a proper examination by competent physicians and presented his claim to the insurance company, and if he had done so, there can be no question, under the proof in this record, but what his rights would have been established, and the benefits under his policies paid to him. It was not necessary that the cashier should have intended to defraud or misrepresent the facts. He, perhaps, was giving his honest opinion as to the legal effect of the policies, and of the degree of proof required by the company; but, in dealing with his act in reference thereto, we are to treat it as though it was the act of the insurance company itself, and the company having so acted, and in effect misrepresented the amount of proof that would be required, it is not now in a position to avail itself of the claim that the necessary proof was not actually presented. Had the company been silent as to the matter, or taken no act in reference thereto, a different case would have been presented, and the policies announced in Berry v. Lamar Life Ins. Co., 165 Miss. 405, 142 So. 445, 145 So. 887; N. Y. Life Ins. Co. v. Alexander, 122 Miss. 813, 85 So. 93, 15 A. L. R. 314, and cases following these would have been applicable.

The cashier, being the particular agent of the insurance company, was in a superior position to know what the meaning and effect of the contract was as against the deceased. Therefore, the company, through its agent. having undertaken to state what would be required, and having stated that inaccurately, is not now in a position to avail itself of the wrong or error.

We find no reversible error in the record, and the judgment of the court below will be affirmed.

Affirmed.