COLUMBIAN MUT. LIFE INS. CO. *v.* EAVES.

(Division A. Jan. 9, 1939. Suggestion of Error Overruled March 6, 1939.)

[185 So. 557. No. 33358.]

Stevens & Stevens, of Jackson, for appellant.

Hal **F. Case,** of Quitman, for appellee.

**McGowen, J.,** delivered the opinion of the court.

The appellee, Mrs. Maggie Eaves, brought an action at law on a life insurance policy issued by The Eminent Household of Columbian Woodmen, a fraternal insurance society, for $1,000, written on the life of Adie David Eaves. The declaration alleged the death of the insured on the 26th day of March, 1937, and in general terms the performance of all conditions required of the beneficiary and the insured under the contract. The appellant plead the general issue and gave notice of affirmative matter under the general issue to the effect that the policy sued on lapsed for failure of the insured to pay premiums for December, 1932, and that insured made application for reinstatement on February 10, 1933, but failed to furnish a certificate of insurability. The application was filed as an exhibit and set up the provisions of the constitution and by-laws of the order as to lapses and reinstatements.

To this notice a counter notice was filed by the appellee in which she set up that the policy carried a provision for payment of disability benefits in lieu of all other

benefits upon the insured's becoming incurably insane, that the insured became insane prior to December, 1932, while the policy was in force, was confined to an asylum, never recovered from his insanity, and died in March, 1937, that the insurer had notice in December, 1932, of the insanity of the insured, who was unable to transact his own business, that appellee denied that an application had been made for reinstatement of the policy, and that on November 10, 1936, the insurer was notified of the insanity of the insured by the attorney, representing the appellee, who was at that time the guardian of the insured, and who requested blanks upon which to make proof of the disability.

Appellant made a motion to strike the counter notice from the files, on the ground mainly of departure in pleading from the original declaration, which was overruled. Thereupon the insurer, appellant, filed a response to the counter notice in which it alleged in substance that the insured had not paid the monthly dues on December 1, 1932, nor had he paid any dues at any time subsequent thereto, that under the constitution in order to be entitled to benefits the insured must pay the monthly instalments, and it denied that the insured was insane prior to December, 1932, and denied that the appellant had any notice or knowledge of that insanity.

The evidence was heard and the jury returned a verdict for the appellee in the sum of $919.40, evidently deducting the instalment payment of $1.55 each month from December 1, 1932, until the date of the death of the insured, with interest, although no instructions were given by the court as to the deduction.

The contract of insurance issued by The Eminent Household of Columbian Woodmen had been assumed by the Columbian Mutual Life Insurance Company, without change of liability thereunder, as a fraternal insurance policy by charter and by contract in accordance with the requirements of Article 14, Chapter 127, Code of 1930, section 5231 et seq., and no point is made here

but that the insured, as a member of the fraternal order, was subject to the constitution and by-laws thereof, which latter were a part of the policy.

The evidence is undisputed that from and including December 1, 1932, to the date of his death, the insured never paid any monthly dues as required, nor did anyone pay them for him. It is undisputed that after that time he was not subject to reinstatement under the constitution and by-laws of the insurer. It is undisputed that from February 26, 1933, the insured was in a hospital for the insane. The evidence furnished by his widow and brother as to when he became insane or lost his reason within the terms of the policy is quite unsatisfactory. It is undisputed that on January 18, 1933, the managing officers mailed to the insured notice that his policy had lapsed, although notice was not necessary under the constitution.

It is contended by appellant that Mrs. Eaves testified that she gave notice by letter in December, 1932, of the insanity of the insured. On cross-examination she admitted that the letter she wrote was after the insured had been placed in the hospital for the insane, which was later than February 26, 1933. She made no effort to show the contents of the letter, to whom it was addressed, or how it was transmitted or delivered to the officers of the insurer. So that this indefinite notice was not within sixty days from the time the claim accrued, as required by Section 382 of the constitution. The time for filing the claim was not extended at all.

It is further insisted that the brother of the insurer had told McLendon, the local collecting agent of the insurer, that the insured was insane, at some indefinite time within sixty days from December 1, 1932.

On the part of the appellant it was shown by the several officers charged with the duty of receiving and passing upon claims for death or disability that they never had any notice of any kind that the insured had become insane, but that the only notice they had received was

a statement, apparently signed by the insured, that he was in good health, in an application for reinstatement which they received on March 3, 1933, until they received notice and an application for blanks upon which to make proof of disability in 1936 from the attorney.

The contract provided for special benefits and conditions, the substance of which was that special benefits granted should be charged against the value of the covenant and be deducted therefrom at death. It also granted a special benefit to the insured while in good standing, the substance of which is a follows: ''Should total and permanent blindness, or total and permanent loss of reason happen to this Guest, or should he lose by severance both arms, or both legs, or one arm and one leg, or should this Guest become totally and permanently incapacitated for work by any disease or external injury, or old age after reaching age 70, then in lieu of all other benefits connected with this Covenant the Fraternity will, on acceptance of proof'', in substance pay one-tenth of the covenant immediately upon acceptance of proof of the permenant total disability, and one-tenth each anniversay thereafter until the full amount is paid, and provided that each anniversary payment should be upon acceptance of satisfctory proof of continued disability, and further provided that in the event of the death of the insured, before payment in full, the balance would be paid to the named beneficiary. This provision is significant. ''9. The right to receive special benefits does not relieve the Guest from the obligation to pay all dues and instalments required by the constitution and or by this covenant.'' Under the constitution a failure to pay the instalments as provided—here the payments were $1.55 on the first days of each month, with ten days of grace allowed—would automatically lapse the policy without notice.

As to special benefits, the constitution required in Section 392: ''In order to render valid a claim for Temporary, Partial or Total and Permanent Disability Ben-

efit, every Member whose Covenant provides for such benefits who shall sustain such disabling accident, or who shall from mental or physical causes become totally and permanently disabled from following or directing any gainful labor, trade, occupation, business or profession, shall by himself, or if personally incapable, by his legal representative or representatives, file upon the prescribed form, notice of such disability with his Council, and on the same date post a copy of such notice to the National Secretary.'' Section 393 described with particularity what this notice shall contain. Section 394 required the local council to investigate and report finally to the national secretary. It is further provided in Section 395 that the national secretary, if he found the report complete, should refer the same to the medical director. Section 396 provided that no notice upon any of the local officers should be construed to be effective as to the society or executive officers thereof.

In order to uphold the judgment of the court below, the appellant insists that liability accrued upon the happening of the event, that the insured became insane at or before the time of the lapse of the policy for nonpayment of dues because of the loss of reason, or incurable insanity, that therefore it was the duty of the insurer to apply from the benefits, which in this case would have been $100 per annum, the amount necessary to pay the monthly instalments to keep the policy in force.

We have made a rather lengthy statement of the case in demonstration of the fact that no liability ensued against the insurer unless and until the insured, or his legal representatives, complied with the detailed requirements of the constitution as to making claim by written notice posted to its managing officers of the disability. This was not done. Under the terms of the constitution, which are binding upon the guest or insured member, there was no liability on the part of the insurer to pay anything until these conditions precedent had

been complied with. The insurer did not agree to pay to all of its members who became disabled within its terms by reason of insanity, but only agreed to pay to its members who complied with the conditions that are necessary to establish liability. There is no contention or suggestion in this record upon which to hang any doubt that the member was not in good standing after December 1, 1932, and never made any kind of claim, in so far as this record discloses, to the officials, whose duty it was to pass upon these claims. They never had an opportunity to pass on any claim made for insured. On the other hand, the brother, who had been paying the dues of the insured, signed his brother's name to a statement that he was in good health. This case is controlled by Independent Order of Sons & Daughters of Jacob of America v. Saul Moncrief, 96 Miss. 419, 50 So. 558; New York Life Insurance Co. v. Alexander, 122 Miss. 813, 85 So. 93, 15 A. L. R. 314; Berry v. Lamar Life Insurance Co., 165 Miss. 405, 142 So. 445 and 145 So. 887; Brotherhood of Railroad Trainmen v. Bridges, 164 Miss. 356, 144 So. 554. The incapacity of the insured did not relieve him of paying premiums nor making application in the manner directed by the constitution substantially for a claim making application for the allowance for the special benefit here involved.

The notice to the local collection agent, McLendon, was not in compliance with, or a waiver of, the mandate of the constitution as to how claims should be propounded and to whom. The constitution so provides in express terms, and also see Section 5249, Code of 1930.

No relief can be granted here because the insured became insane and therefore should be relieved from his failure to pay dues. See Independent Order of Sons & Daughters of Jacob of America v. Saul Moncrief, supra, Mixon v. Sovereign Camp, W. O. W., 155 Miss. 841, 125 So. 413; Berry v. Lamar Life Insurance Company, supra.

The several sections of the constitution of this insurer are so plain and so free from ambiguity as to leave no place for a construction thereof in favor of the insured in this case. The peremptory instruction requested by the appellant and refused by the court should have been granted.

Reversed and judgment here for appellant.