## Metropolitan Casualty Ins. Co. *v.* Cato.

[74 South. 118, Division A.].

1. Insurance. *Action on policy.   Plea.   Breach of warranty.   Tem-perate habits.*

   Where in a suit upon an accident insurance policy containing a warranty "that insured's habits of life were correct and temperate," the defendant filed a plea alleging that plaintiff, when he made his application, was an habitual user of intoxicating liquor, such a plea was demurrable as not showing a breach of such warranty since a person can habitually use intoxicating liquor and at the same time be of temperate habits.

2. Insurance. *Action on policy.   Plea.   Breach of warranty.   "Disease."*

   Where in a suit by insured on an accident insurance policy, the defendant pleaded a breach of warranty of sound health, because insured was, at the time of his application, suffering from a "disease" of the kidneys, such a plea was not demurrable, since the term "disease" must be given the same meaning as it would be given in construing the policy, and means a serious ailment having a tendency to impair health and shorten life and does not mean merely a temporary or trivial ailment.

Appeal from the circuit court of Washington county. Hon. Frank E. Everett, Judge.

Suit by William R. Cato, against the' Metropolitan Casualty Insurance Company. From a judgment for plaintiff, defendant appeals.

The facts are fully stated in the opinion of the court.

*L. A. Smith,* for appellant.

The court will pardon me if I do not repeat here the citation of authorities on the construction of insurance contracts, as the court is thoroughly familiar with the rules of construction in vogue in such cases and our court has frequently baffled designing policy holders who sought to have the courts enlarge their contracts, after liability accrued, in order to gain what

they were not entitled to. The original briefs in No. 18,893 and No. 18,795 contain a number of decisions along these lines, and I respectfully refer the court to those two briefs as a part of this one for the purpose. It is sufficient to add, as Mr. Elliott in his work on Contracts, says, that the parties are to be presumed to have meant something by every clause in a contract; so, the insurance company meant to limit the operation of clauses by the particularizations set forth in clause 3, otherwise clause 3 would have been blotted out by the court and this the court has no authority to do. In truth counsel for appellee relies on old decisions based on old forms of policies which contained only a similar clause to our clause 2, but did not contain any clause like our clause 3; or he relies on more recent authorities that yet do not construe policies that contain our clause 3, but do contain our clause 2 as Mr. Elliott says it is the difference in the language of the policies, which makes the decisions seem inconsistent and contradictory, and we insist that construing our policy and comparing it to the policies construed in the authorities we cite, it will be readily seen that plaintiff has no case for recovery now, because the construction of the appellant will be found sustained by the courts and the language of the poliiy on which plaintiff bases his claim. If in truth and in fact, clause 3 was not in older Metropolitan policies and was inserted in these contracts to prevent any effect on the companies business by the very decisions on which appellee relies to win his case, and if it was to avoid such a construction being put on these policies that caused clause 3 to be added, this is a proper course for the company to do, as says our own high court in the *Co-operative Life Association of Mississippi* v. *John D. Leflore et al.* 53 Miss. 1:

"If the insurance companies, conforming their policies to the requirements of each successive decision, have protected themselves against all possible loss by

any misrepresentation no matter how insignificant or unintentional, it would be most unseemly in the courts to seek by new exactions, to nullify these advantages. It is neither the duty nor the right of courts to protect adults against the consequences of their agreements incautiously entered into. Their functions are exhausted when they construe and enforce them as written.

Therefore, we say that peremptory instruction should have been granted to the defendant, because, the plaintiff confessed on the stand to the actual performance of many substantial duties and because he confessed his inability to "perform some one or more substantial daily duty or duties." By so doing, he showed that in April, 1914, when he returned home from the hospital at Memphis he became disabled as defined in clause 3, and was entitled to partial benefits for fifty-two weeks, which term had expired when this suit was brought.

Certainly the peremptory instruction should not have been granted to plaintiff, because of the testimony which supported the contention of the defendant, which is in the record. There was plenty of room for the jury to have brought in a verdict and a just one for defendant. Plaintiff is never entitled to a peremptory instruction if there is any evidence, however slight, tending to support the defense set up by the defendant. *Robertson* v. *I. C. R. R. Co.,* 17 So. 235; Hughes on Instructions to Juries, paragraph 140.

The court also erred in sustaining the demurrer of plaintiff to defendant's first and second special pleas because if true, said pleas bar plaintiff of any right to recover anything at all, and make his policy void. The demurrer admits the truth of the plea. The plea No 1. is as follows:

"And for a first special plea to the declaration, comes the defendant, by its attorneys, and says that the plaintiff ought not to recover, for that the plaintiff in his application for the policy sued on, which application is copied into said policy, warranted that: 'I am sound and

whole, mentally and physically. I am neither lame, deaf, deformed, nor suffer any impairment of vision of either eye nor have I ever been subject to fits, vertigo, somnambulism, or any chronic disease except (no exceptions)'; but in truth and in fact the plaintiff, at the time of making said application was not sound and whole, mentally and physically, but in fact and in truth then had a kidney disease. And defendant says that such warranty was material to the risk asumed by it, and that said risk would not have been assumed and said policy issued had it known of the disease of the kidneys; and that this unsoundness and disease of the kidneys was unknown to this defendant until long after it had paid him two hundred and seventy-five dollars, under said contract, and the amount so paid him is far in excess of all premiums paid by the plaintiff to the defendant for or on account of said policy sued on. Wherefore defendant says that, by reason of said false warranty, said policy is void, and the plaintiff ought to be barred, etc., etc.''

This plea sets up as a violation of the warranty that Cato was not sound and whole mentally and physically, because he was diseased when he applied for the policy, that he had a kidney disease. A disease of one of the vital organs, the sewerage system of the human organism known as the body, and yet plaintiff by his demurrer treats it as nothing, because he says that it does not mean unsoundness of the body to have a kidney disease. The defendant says any disease, by the language of the warranty which made the applicant unsound mentally or physically, was a breach of the warranty, and alleged that applicant had a disease when he made the warranty and for that reason the defendant was deceived into issuing the policy because if it had known of the disease, it would not have issued the policy. These facts, the demurrer admits. The policy makes all statements in the applications, warranties, and a breach of a warranty avoids the policy.

*Pacific Mutual* v. *Glazier*, 150 S. W. 549; *Fidelity Mutual Life* v. *Miazza*, 93 Miss., 18, 423; *Am. Central Ins. Co.* v. *Antrim*, 38 So. 26; *Co-Operative Life* v. *J. D. Leflore*, 53 Miss., 1; *Mut. Reserve F. Life* v. *Opp*, 30 So. 69; *Supreme Conclave* v. *Saylor*, 32 So. 50.

*Campbell & Cashin*, for appellee.

The court did not err in giving the peremptory instruction. The plaintiff's testimony and his helpless, physical condition, as he appeared in court, showed that he was totally disabled, and was entitled to recover under the provisions of Clause 2 of the policy. As said in 4th Cooley's Briefs on Insurance page 3290:

"It must not, however, be inferred that to constitute total disability, the insured must be unable to perform each and every act and duty connected with his occupation. On the contrary, the weight of authority supports the rule that even under the clause providing for indemnity for disability preventing insured from prosecuting any and every kind of business pertaining to his occupation, it is sufficient if insured is disabled from performing the substantial and material acts connected with such occupation."

It is clear from the testimony, and from Mr. Cato's cripple and helpless condition, as he appeared in the court below, that he was disabled from performing the substantial and material acts connected with his occupation of superintending a cotton plantation. See our briefs in Causes Numbers 18793 and 19795, and also the following authorities: 4 Cooleys, Briefs on Insurance, p. 3290; 5 Elliott on Contracts, sec. 4398; *Turner* v. *Fidelity and Cas. Co.* 38 L. R. A. 529, and extended note; *Lobdill* v. *Laboring Mens', etc., Assn.*, 38 L. R. A. 537; *Keith* v. *C. B. & Q. R. R. Co.*, 23 L. R. A. (N. S.) 352, and extended note; T. A. & E. Am. Cos., Note p. 815; *Industrial Mut. Indemnity Co.* v. *Hawkins* (Ark.), 127 S. W. 457, 29 L. R. A. (N. S.), 635, and note; and

*Brotherhood of Locomotive Firemen and Engineers* v. *Aday,* (Ark.), 134 S. W. 928; 34 L. R. A. 126.

SYKES, J., delivered the opinion of the court.

This is a companion case to the two cases bearing the same style decided two weeks ago by this division. 74 So. 114, 118. This suit is for subsequent installments on the same insurance policy. For a history of the litigation reference is made to the opinion delivered in the first one of this series of cases. At the conclusion of the testimony a peremptory instruction was given in favor of the plaintiff for the amount sued for. In the suit at bar the insurance company filed the following special plea:

"And for the first special plea to the declaration comes the defendant, by its attorneys, and says that the plaintiff ought not to recover, for that the plaintiff, in his application for the policy sued upon, which application is copied into said policy, warranted that: 'I am sound and whole, mentally and physically. I am neither lame, deaf, deformed, nor suffer any impairment of vision of either eye, nor have I ever been subject to fits, vertigo, somnambulism, or any chronic disease, except (no exception)'—but in truth and in fact the plaintiff at the time of making said application was not sound and whole, mentally and physically, but in fact and in truth then had a disease of the kidneys, which was well known to him. And defendant says that such warranty was material to the risk assumed by it, and that said risk would not have been assumed and said policy issued had it known of the said disease of the kidneys, and that this unsoundness and disease of the kidneys was unknown to this defendant until long after it had paid him two hundred and seventy-five dollars under said contract, and the amount so paid him is far in excess of all premiums paid by the plaintiff to the defendant for or on account of said policy sued

upon.   Wherefore defendant says that, by reason of
said false warranty, said policy is void, and that plain-
tiff ought to be barred; and this the defendant is ready
to verify.''

As a second special plea it filed the following:

''Comes the defendant, by its attorneys, and for a
further and second plea to the declaration filed herein
against it says that the plaintiff ought not to recover,
for that the plaintiff, in his application for the policy
sued on, represented, which representation was a war-
ranty, that, 'My habits of life are correct and tem-
perate,' but defendant says that the habits of the plain-
tiff at the time of said application and said represen-
tation, were not correct and temperate, but, on the con-
trary, the plaintiff was then an habitual user of intoxicat-
ing liquor, viz., whisky, and this was unknown to the de-
fendant, and was material to the risk assumed by de-
fendant, and had this defendant been apprised of the
truth in regard to said representation it would not have
assumed the risk and would not have issued said
policy.   Wherefore defendant says that, by reason of
said false representation, said policy is void, and the
plaintiff ought to be barred, and this the defendant is
ready to verify.''

Demurrers were sustained to each of these pleas.
So far as the second special plea is concerned, we think
the court was correct in sustaining the demurrer to it.
Mr. Cato may have been an habitual user of intoxicat-
ing liquor, viz. whisky, and at the same time have
been temperate in the use of same.   The first special
plea, however, is to the effect that in the written ap-
plication Mr. Cato warranted that he was sound and
whole, mentally and physically, when as a matter of
fact at the time of making this warranty he was not
sound and whole, but had a disease of the kidneys,
which fact was well known to him.   It is the contention
of the appellee that the demurrer was well taken be-
cause the appellee made no especial warranty that he

did not have a disease of the kidneys. He further claims that the plea should have alleged that the plaintiff had a chronic disease of the kidneys at the time the application was made. The terms ''sickness'' and ''disease'' in warranties of this character in insurance policies have a clear and well-defined meaning as construed by the decisions of the different states. As it is expressed in Joyce on Insurance, section 1849:

''The decisions seem to agree that the terms 'sickness' and 'disease' do not mean a trifling illness nor occasional physical disturbances resulting from accidental causes, and not permanent in their effects, nor a temporary illness which readily yields to professional treatment and leaves no permanent physical injury or disorder calculated or having a tendency to shorten life; that an inquiry as to certain diseases must refer to that alone, and not to one not included within the term nor connected therewith in symptoms or effect upon the system. If, however, the assured has actual knowledge as to the fact that the state of his health is such as to materially affect the risk and increase the hazard, it must be disclosed.''

See, Also, *Archibald* v. *Mutual Life Ins. Co.*, 38 Wis. 542, from which opinion we quote as follows:

''In his application for the insurance Mr. Archibald represented, among other things, that his kidneys were in a healthy state and free from any tendency to disease. On behalf of the defendant the court was asked to instruct the jury that, 'if the assured was ailing of any disease of the kidneys at the time of the application, and concealed it from the examining surgeon or from the company, it avoids the policy.' We are inclined to think that there was some testimony tending to prove that the assured was then suffering from a disease of the kidneys and knew the fact. If so, the instruction should have been given.''

It is the duty of the court to give the same construction to these terms in a plea that it gives to them

when construing the insurance policy. In the case of *Meyer* v. *Fidelity & Casualty Co.,* 96 Iowa, 378, 385, 65 N. W. 328, 330, 59 Am. St. Rep. on page 378, the court, in construing similar terms, has the following to say:

"As used in this policy, we think the words 'disease' and 'infirmity' mean practically the same thing. When speaking of an 'infirmity,' we generally mean the state or quality of being infirm physically or otherwise, debility or weakness; and by the use of the word 'disease' we desire to convey the impression of a morbid condition, resulting from some functional disturbance or failure of physical function which tends to undermine the constitution. We do not, as a general rule, apply either term to a slight and temporary disorder, or to the imperfect working of some function, which is over in a short period of time, and which, when recovered from, leaves the body in its normal condition. In using either of the words, we do not, as a rule, refer to a slight and mere temporary disturbance or enfeeblement."

See also, *Preferred Accident Ins. Co.* v. *Muir,* 126 Fed. 926, 61 C. C. A. 456; *Logan.* v. *Provident Savings Life Assurance Society of N. Y.,* 57 W. Va. 384, 50 S. E. 529; *Cady* v. *Fidelity & Casualty Co. of N. Y.,* 134 Wis. 322, 113 N. W. 967, 17 L. R. A. (N. S.) 260.

The term "disease of the kidneys," as used in the special plea, does not mean that he was suffering from any temporary or trivial ailment, but rather from a serious ailment having a tendency to impair health and shorten life. It therefore follows that the court erred is sustaining the demurrer to this plea.

*Reversed and remanded.*