MUTUAL BEN. HEALTH & ACCIDENT ASS'N *v.* MATHIS.

(Division A. June 13, 1932.)

[142 So. 494. No. 30079.]

**Orma R. Smith,** of Corinth, for appellant.

**W. C. Sweat,** of Corinth, for appellee.

Briefs of counsel not found.

**Cook, J.,** delivered the opinion of the court.

The appellee, C. H. Mathis, instituted this suit in the circuit court of Alcorn county against the appellant, the Mutual Benefit Health & Accident Association, on an insurance policy issued by the appellant, which provided for certain disability benefits to the appellee. At the conclusion of the testimony, the court directed a verdict for the appellee for one hundred seventy dollars and eighty-three cents for disability and hospital expenses, while he was continuously confined within doors, and five hundred ninety dollars and sixty-seven cents for the time that he was totally disabled and suffered total loss of time, but was not confined within doors; and, from the judgment entered for the aggregate amount of seven hundred sixty-one dollars and fifty-one cents, this appeal was prosecuted.

The clauses of the policy upon which the judgment was based, are parts I and J thereof, which read as follows:

"Illness Indemnities.

"Part I. Confining illness one hundred dollars per month for life.

"The association will pay, for one day or more, at the rate of one hundred (100.00) dollars per month for disability resulting from disease, the cause of which originated more than thirty days after the date of this policy, and which confines the insured continuously within doors and requires regular visits therein by legally qualified physician; provided said disease necessitates total disability and total loss of time."

"Part J. Non-confining illness fifty dollars per month.

"The association will pay, for one day or more at the rate of fifty dollars per month, but not exceeding one month, for disability resulting from disease, the cause of which originates more than thirty days after the date of this policy, and which does not confine the insured continuously within doors but requries regular medical

attention; provided said disease necessitates total disability and total loss of time."

Part J of the policy, above quoted, was extended to cover the entire life of the insured by a rider indorsed on the policy, which is as follows: "In consideration of an additional premium of four dollars annually or one dollar quarterly, the association will pay to the insured, the monthly indemnity as specified in this policy, in part J, so long as the insured shall live and suffer the disability therein described."

The appellee had been engaged in the laundry business for fifteen years, and for eight years prior to the beginning of his disability was the owner of a steam laundry in Corinth, Mississippi, and had been engaged in the active discharge of the duties of manager of said laundry. This laundry contains about twenty-five machines, which are operated by different employees, and which are located in a building with a floor space of seventy-five by one hundred seventy-five feet, with the business office of the laundry located at the front of this floor space. In the operation of the laundry it is necessary for the manager to be on his feet almost continuously from eight to ten hours per day while engaged in the supervision of the machines and the employees in order to see that the machines are properly operated and the work properly performed.

In October, 1930, the appellee was stricken with a disease which his family physician and another Corinth physician diagnosed as acute diabetes. These physicians advised him to consult a specialist in Birmingham who operated a clinic and hospital for the treatment of such diseases. He then went to Birmingham for examination by this specialist, who confirmed the diagnosis of the local physicians, and prescribed a very strict diet. He made several trips to Birmingham, and each time remained in the hospital several days. Later he was confined to his bed at home for eighteen days; and it is con-

ceded by the appellant that he is entitled to recover one hundred seventy dollars and eighty-three cents, under part I of the policy, for hospital expenses and disability while confined within doors. The appellee's several physicians testified that common care and prudence, and due regard for the preservation of his health and prolongation of his life, required that he give up all work, avoid all exertion and worry, and take a complete rest, and that they advised and urged him to do so; but, over the protest of these physicians, he continued to go to his place of business early in the morning and to remain there throughout the working hours. He turned the active management of the business over to another, but remained in the office. During the hours before noon, in a limited way, he attended to some duties in his office such as answering the telephone, writing an occasional letter, checking receipts from his drivers once a week, checking the pay roll once a month, buying supplies and paying bills, and occasionally advising with his manager and drivers. He placed a cot or bed in his office, and after lunch spent from two to three hours lying down. None of the duties performed by appellee required that he stand on his feet, and the testimony was to the effect that he was not physically able to perform any substantial part of the duties of manager of the business. With the organization the appellee was compelled to employ after he became ill, the business went as well during his absence from the plant as when he was present, and, if he had been able to perform the usual and ordinary duties of manager, he could have dispensed with the service of two employees. The proof shows that after his illness began the appellee lost more than forty pounds in weight, but at the time of the trial he had regained some of this loss of weight, and the state of his health was somewhat improved.

It is settled doctrine in this state that, in order for one to be totally disabled within the meaning of a health or

accident insurance policy, it is not necessary that he be wholly incapacitated to perform any duty incident to his usual employment or business, but, if the insured is prevented by his injury or illness from doing the substantial acts required of him in his business, or if his physical condition is such that, in order to effect a cure or prolongation of life, common care and prudence require that he cease all work, he is totally disabled within the meaning of such policies. Metropolitan Cas. Insurance Co. v. Cato, 113 Miss. 283, 74 So. 114; Equitable Life Insurance Society v. Serio, 155 Miss. 515, 124 So. 485, 486; Metropolitan Life Insurance Co. v. Lambert, 157 Miss. 759, 128 So. 750, 752.

In the Cato case, supra, it was held that, under a clause in an accident insurance policy giving a weekly indemnity if the injuries continuously and totally disabled and prevented the insured from performing any and every kind of duty pertaining to his occupation, an insured was totally disabled when he was prevented by his injury from doing all the substantial acts required of him in his business, nothwithstanding the fact that he occasionally was able to perform some single act connected with his business.

In the Serio case, supra, in discussing the particular interpretation to be given insurance contracts containing provisions for disability benefits, the court said that the construction which is placed by nearly all courts on insurance contracts such as the one here involved "is an equitable and reasonable interpretation; and is not that literal interpretation which would require a condition of complete helplessness, nor such an entire physical or mental inability in respect to the pursuit of an occupation or employment that the insured can do absolutely nothing. And particularly is the construction the more liberal in its application to a case where the disability arises out of a disease the nature of which is such that common care and prudence require the in-

sured to rest to the extent that he shall refrain from the ordinary exactions of any fixed employment, else the disease will progress and cause death.''

In the Lambert case, supra, it was held that the fact that the insured had been engaged since his injury in working as a night watchman, did not necessarily indicate that he was not totally disabled within the meaning of the policy, the court further saying: ''If his physical condition then, and at the time of the trial, was such that, in order to effect a cure, common care and prudence required that he cease attempting to work—and his physician so testified—he was totally disabled within the meaning of the policy.''

In the case of Lamar Life Insurance Co. v. Catlett (Miss.), 139 So. 455, the appellee was sheriff of his county, and was in such condition as a result of an accident, so his physicians testified, that, in order to effect a cure or prevent further impairment of his health, common care and prudence required that he stay at home and cease all work; but he did not follow the advice and instructions of these physicians. Prior to his accident he was actively engaged in the discharge of the outdoor or field duties of his office. After his accident, he was compelled to give up the major portion of these duties, but he frequently drove his car, occasionally made an arrest and served process, and advised with his employees as to the discharge of their official duties. Upon the authority of the Serio and Lambert cases, supra, it was held that he was totally disabled within the meaning of the policy, and he was permitted to recover.

Applying the doctrine announced in these cases to the facts shown in this record, it is undoubtedly true that the appellee was totally disabled within the meaning of the quoted provisions of the policy; and we do not understand counsel for the appellant to contend that he would not be entitled to recover if the policy provided benefits merely for total disability resulting from dis-

ease. The contention is that since, in case of non-confining illness, the benefit is payable only when the disease necessitates a total loss of time in addition to total disability, there can be no recovery under the facts here in evidence. In other words, since the proof shows that the appellee performed some of the duties incident to the management of his business, there was not a total loss of time within the meaning of part J of the policy contract. In determining the meaning and effect of the terms ''total disability'' and ''total loss of time'' resulting from disease, the same rules of construction will apply. There can be no total disability in so far as the transaction of business is concerned without consequent total loss of time; and a disease which ''necessitates total disability'' will likewise ''necessitate total loss of time.'' In other words, one who is totally disabled to perform all the duties of his business or usual occupation within the meaning of an insurance contract must necessarily suffer a total loss of time within the meaning of a similar provision of such contract; and the fact that he performed some of the minor and incidental duties pertaining to the business does not deprive him of the right to recover benefits provided for disease which necessitates total disability and total loss of time.

The record discloses that the appellee's several physicians constantly advised and urged him to cease all labor and exertion, and that common care, prudence, and due regard for his health and the prolongation of his life, required him to do so; and, if he had acted in accordance with the advice of these physicians, it would unquestionably be conceded that he was entitled to recover, and he should not now be denied recovery for the reason that he, at the risk of further impairment of his health, disregarded this advice and made a good-faith effort to perform some light and incidental duties of his employment. The clause under which the recovery was allowed provides a monthly benefit for disability resulting from

disease which does not confine the insured continuously within doors but requires regular medical attention, provided such disease necessitates total disability and total loss of time; and, under the proof in this case, we are of the opinion that there was total loss of time as well as total disability within the meaning of this provision.

The appellant, however, contends that the testimony of the physicians that common care and prudence for the preservation of appellee's health and the prolongation of his life demanded that he cease work entirely and avoid as far as possible all worry and excitement of the nervous system, is contradicted by the fact that at the time of the trial the appellee's health was somewhat improved, and that consequently the peremptory instruction granted to the appellee should have been refused, and the question of whether there was total disability and total loss of time should have been submitted to the jury. The proof shows that after he was stricken in October, 1930, the appellee continued his efforts to discharge some of the duties incident to the office management of his business until the following September, when he was forced to take his bed, and there remain for eighteen days; and we do not think that the fact that his condition happened to be somewhat improved at the time of the trial in the court below is evidence of the fact that his recovery had not been retarded by his failure to cease work, and that common care and prudence did not require him to follow the advice and instructions of his physicians.

The judgment of the court below will be affirmed.
Affirmed.