## Mississippi Power & Light Co. *et al. v.* Tripp.

(Division B. Oct. 10, 1938.)

[183 So. 514. No. 33293.]

**A. M. Nelson** and **Green, Green & Jackson**, all of Jackson, and **F. E. Leach**, of Carthage, for appellants.

Tom J. Barnett, of Carthage, and **Barnett, Jones &
Barnett**, of Jackson, for appellee.

Argued orally by **Forrest B. Jackson**, for appellant, and by **Ross R. Barnett**, for appellee.

**Ethridge, P. J.**, delivered the opinion of the court.

Charles Alonzo Tripp, the appellee here, brought suit against the Mississippi Power & Light Company and L. O. Jones, a motorman on one of the busses operated in the city of Jackson for a personal injury, the plaintiff claiming to have lost an eye because of the alleged negligent operation of a bus upon which plaintiff was a passenger. It appears from the plaintiff's evidence that on the 10th of April, 1937, he boarded a bus of the defendant company, together with his brother and R. B. Neville, his nephew, on the corner opposite the Baptist Hospital in the city of Jackson, intending to disembark when the bus stopped at Hemphill's Drug Store opposite the Old Capitol. The plaintiff and Neville testified that the bus was being operated at a speed which they estimated to be thirty to thirty-five miles an hour, and without warning was brought to a sudden stop within a distance of two and a half or three feet; that the plaintiff and Neville, who were standing, the seats all being occupied by other passengers, were thrown forward by such sudden stopping, the plaintiff being thrown against the metal rod and cash box in which money was deposited by the passengers, injuring his face and eye by striking the said metal box and rod; that as a result of the said injuries the plaintiff lost the sight of one eye.

The brother of the plaintiff, Tripp, was said to be sick, and was not introduced as a witness on the trial.

The defendant Jones was introduced as an adverse witness, who testified that he operated a bus for the Mississippi Power & Light Company in the city of Jackson; denied that he suddenly stopped the bus, as claimed by the plaintiff and Neville, but that he made his regular stop at the Hemphill Drug Store corner in the customary manner; that there was no violent stopping of the bus, and that he knew nothing of any injury having been sustained by plaintiff while on the bus. He also testified that the bus was being operated at a speed of from twelve to fifteen miles an hour, and that there was no sudden stop or jerk of the bus. He did not know whether or not the plaintiff or Neville were passengers on the bus at the time.

The plaintiff also introduced three physicians, who had examined his eye, and who stated that the injury to the eye was such, in the opinion of the two physicians who were not eye specialists, as to require treatment by a specialist; plaintiff, on Monday following the accident on Saturday night, went to Dr. M. L. Batson, a specialist, for treatment, making several visits to him on various occasions. Dr. Batson testified that an examination of plaintiff's eye showed that there was a cut on the eyelid, and on the forehead, the depth of which he did not know; but that the eyeball contained blood when first examined, at which time the vision of the plaintiff was misty and dim; later plaintiff lost his sight in that eye completely.

The defendant introducted L. O. Jones, who testified that he was employed by the defendant, the Mississippi Power & Light Company, as a bus driver, and that the company, as an inducement for the avoidance of accidents, and for careful operation of busses, had a provision awarding to the motormen an extra ten dollars for each month in which no accidents were reported or sustained. There is also a rule deducting five dollars from

their salaries for a preventable accident reported. He testified that there was a governor on the bus which prevented its being operated in excess of thirty miles an hour, and also that the bus was being operated from twelve to fifteen miles an hour, and denied the statement as to the sudden stopping of the bus, as stated above.

. The defendants also introduced Mrs. Ozella Brooks, who resided in the city of Jackson, some eight or ten blocks from the G. M. & N. depot, who testified that on the Saturday night in question the plaintiff came to her house—the plaintiff being her uncle—in an intoxicated condition, dragged or brought in by R. B. Neville, her first cousin; that he was placed in bed for the night in her home; that when she woke up the next morning he asked where he was and how he came to be there; that Neville, who was present, stated that he had brought him there; that plaintiff asked how his eye had been hurt, to which Neville had replied that he had fallen down on some rocks across the river from Jackson, in what is known as the ''Gold Coast.'' The plaintiff then asked about his glasses, and Neville told him to look in his pocket; he reached into his pocket and produced his glasses, with ''one side broken off,'' referring, it seems, to the piece which holds the glasses in place by going over the ear. She testified that he said he didn't remember falling or how he hurt himself. in substance; and, further, that Neville brought the plaintiff into her home in a drunken condition, telling her that he had been across the river, and had fallen and injured his eye over there.

C. L. Axton was introduced as a witness by the defendant, who testified that he boarded at Mrs. Brook's place, with his little girl, occupying a front room in the home; that Neville brought the plaintiff to the home that night in an intoxicated condition, and put him to bed in a room adjoining his.

The witness, Mrs. Ozella Brooks, was impeached by testimony to the effect that her reputation for truth and

veracity were bad in the community in which she had resided. C. L. Axton, also, was impeached by showing that he had been convicted of the crime of drunkenness and exposure of his person in the city of Greenville. It appeared that Mrs. Ozella Brooks had formerly lived in Leake county, but had been living in the city of Jackson about three years. The witness who testified as to her reputation for truth and veracity resided in the community in Leake county where she had formerly lived. It is suggested that it was improper to introduce this impeaching evidence, because Mrs. Brooks had not lived in the community recently, having established her residence in Jackson. Both the plaintiff and Neville denied the statements testified to by Mrs. Brooks. In the examination of the witnesses who impeached the reputation of Mrs. Brooks the following questions were asked and answered: "Do you know Mrs. Ozella Brooks? Yes, sir. How long have you known her? All her life. Do you know what her general reputation for truth and veracity is in the community in which she lives? Yes, sir. Is it good or bad? It is bad. That is all." And on cross-examination: "That is all you know about this case? Yes, sir."

The next witness, T. S. Lewis, also lived near Goodhope, Leake county, and knew Mrs. Ozella Brooks all her life. He was asked, "Do you know what her general reputation is in the community in which she resides for truth and veracity? Yes, sir. Is it good or bad? Bad. That is all." On cross-examination: "Do you know Mr. Lon Tripp's (plaintiff's) general reputation in the community in which he resides for truth and veracity? Well, yes. Is it good or bad? Well, it had been bad." Re-direct examination: "What about it now? It is better. That is all."

Mr. Walter Burnside was introduced as a witness in behalf of the plaintiff. He testified that he lived near Goodhope, where he was born and reared, before removing to Ludlow. He was asked: "Do you know a wit-

ness that testified here this afternoon, Mrs. Ozella Brooks? Yes, sir. How long have you known her? Well, I have known her ever since I have been in that community. Do you know her general reputation for truth and veracity in the community in which she resides? Yes, sir. Is it good or bad? Bad. That is all.''

The next witness introduced for the plaintiff, Cleo Shannon, testified that he lived about two and a half miles west of Goodhope, knew Mrs. Ozella Brooks— had known her all his life. He was asked, ''Do you know her general reputation for truth and veracity in the community in which she resides? Yes, sir. Is it good or bad? Bad. That is all.'' And on cross-examination: ''The lady you aré talking about, Mrs. Ozella Brooks, is a widow and the mother of four children. Is that the one you are talking about? Yes, sir. How long since you saw Mrs. Ozella Brooks? I saw her here today. I mean prior to coming here to court today? I don't know how long it has been. Well, how long has it been since she resided out there in the Goodhope community? It has been close to three years since she left out there. Then you don't know what her present reputation is in the community in which she resides? Yes, sir. You know her reputation there? Yes, I hear people talk. Who have you heard talk about it? Her folks. You mean that for many? Yes sir. . . . You are not related to Mr. Lon Tripp? Yes, sir. What relation? He is my uncle. Are you related to Mrs. Ozella Brooks? Yes, sir, she is my aunt. That is all.''

It will be seen from this that the witnesses, being questioned, answered that they were aware of her reputation in the community in which she had resided. They were not interrogated as to whether this knowledge was in regard to her reputation in Jackson, where she now lives, or in Leake county, where she formerly lived; and we are not called upon to decide just how long a person's abandonment of residence in a community where he had formerly resided (but from which he has moved) must

be, before the evidence of general reputation in the former community is inadmissible. On the record in this case we think there was no error in admitting this testimony.

The court granted the plaintiff instruction No. 1, which reads as follows: ''The court instructs the jury for the plaintiff that under the law of the State of Mississippi it is the duty of a common carrier of passengers for hire to exercise a high degree of care in transporting such passengers to their places of destination and if you believe from a preponderance of the evidence in this case that the plaintiff was a paid passenger on the occasion when he complains of being injured and that at the time of plaintiff's injuries if any as shown by the evidence the Mississippi Power & Light Company was a common carrier of passengers and that the plaintiff was a passenger on one of its busses and that the codefendant L. O. Jones was guilty of negligence in stopping the said bus at a time when said Jones was on duty for the defendant corporation and such negligence if any as shown by the evidence proximately contributed to such injuries if any as shown by the evidence then it is your sworn duty to return a verdict for the plaintiff.''

The plaintiff also obtained an instruction that if the jury should find for him, in assessing the damages it ''must take into consideration the pain and suffering sustained by the plaintiff, if any, as shown by the evidence,'' and ''the pain and suffering which he may undergo in the future, if any, as shown by the evidence,'' and the permanency of the injury, if the jury believes it to be permanent.

There is testimony to show that Mr. Tripp suffered considerable pain from the injured eye; also, testimony to show that he still suffers some from the injury, and that the injured eye may affect the other eye unless the injured eyeball is removed, which operation would cost about $100, plus $20 for an artificial eye.

Complaint was made of the first instruction above set out that it did not define what constitutes negligence in connection with stopping the bus. The language used in the instruction was, "that the plaintiff was a passenger on one of its busses, and that the codefendant, L. O. Jones, was guilty of negligence in stopping the said bus at a time when said Jones was on duty for the defendant corporation, and such negligence if any as shown by the evidence proximately contributed to such injuries, if any, as shown by the evidence," etc. The term "negligence" is generally understood; and while it would have been proper to define the particular acts relied on as constituting negligence, the testimony in the case points out the acts upon which the recovery is sought, and the jury were informed of the facts relied upon to sustain a verdict.

The defendant procured an instruction informing the jury that "unless you believe from the preponderance of the evidence in this case that the plaintiff, C. A. Tripp, received the injuries complained of while riding as a passenger on one of the motor busses of the Mississippi Power & Light Company while it was being operated and driven by L. O. Jones, and in addition thereto that the plaintiff, C. A. Tripp, received such injuries, if any you may find, as the direct and proximate result of the said L. O. Jones operating and driving said bus at such a fast rate of speed and bringing the bus to a stop so suddenly and without warning that it threw the said C. A. Tripp into a portion of the metallic part of said bus, then it is your sworn duty to return a verdict for the defendants."

We think this instruction places before the jury facts which constitute negligence; and that there is no reversible error in the instructions given in the case.

It is argued that the verdict is contrary to the overwhelming weight of the evidence, and that a new trial should be awarded on that account. It is suggested that the plaintiff should have called some other passenger or

person to show the truth of, or substantiate his testimony as to his injury, and should have called some one from the drug store where he purchased some liniment or aspirin or powders, to relieve his suffering, to which he testified; and should have called someone from across the river, to show that he was not there at that time.

It will be observed from the statement of facts that there was no direct proof by any witness that the plaintiff, in fact, was across the river, or that he received his injury there. The only evidence on that point is a statement by Mr. Neville, alleged to have been made in the presence of other witnesses, that the plaintiff was so injured across the river in the manner testified to by Mrs. Brooks. Both Tripp and Neville denied having been over there, and the admission of the statement of Neville in the presence of the plaintiff would only be a statement not denied by the plaintiff in his presence.

The testimony for the plaintiff was direct and positive as to where the injury was received, and it was for the jury to find the facts from the testimony.

The question of the force of a jury verdict on appeal is discussed, with reference to the power of this Court to set it aside, in several cases, one of which is Shelton v. Underwood, 174 Miss. 169, 163 So. 828, where the power and duty of the trial judge in regard to the verdict of the jury is fully discussed, as well as the power of this Court on appeal. Another case dealing with this question is Davis, Director General, etc., v. Temple, 129 Miss. 6, 91 So. 689. What is said there, and in other cases, need not be repeated here. The jury is an instrumentality provided by law to decide in regard to controverted facts under the direction of the trial court as to the rules of law to be applied by the jury in reaching a decision. It often results that injustice without remedy may arise in particular cases. The law must be administered under general rules, and upon general principles. On the whole trial by jury is a satisfactory method of determining facts, sanctioned by long usage; but at times

there are verdicts which personally we should not have rendered had we been triers of the facts, but which are sustained by the law in cases of conflicting evidence. It is only when the facts are contrary to the overwhelming weight of the evidence that the Court can say that the verdict is the result of prejudice, passion or corruption, and set it aside. In the case before us there is no such overwhelming weight of evidence against the verdict as to warrant this Court in interfering.

The amount of the verdict in this case is $7,000.00, for the loss of an eye and the pain and suffering incident thereto. In Cotton Mill Products Co. v. Oliver, 153 Miss. 362, 121 So. 111, the verdict for $12,500, awarded to a man thirty-four years of age, earning two dollars a day, for injuries necessitating the removal of one eye, with intense and continuous pain for thirty hours after the accident, and also materially affecting the other eye, was held not excessive. In this opinion, on page 380 of the Report, Judge McGowen, speaking for the Court, said, "In the instant case we have no scales with which to delicately weigh the amount of suffering endured by the appellee before the removal of his eye. His suffering must have been intense and continuous for 30 hours. He stated that he continued to endure pain until the date of the trial, and that his other eye was materially affected. The jury saw and heard him, and we cannot say that the verdict is grossly excessive, nor can we say that it reflects passion and prejudice."

In the case of Teche Lines, Inc., v. Bateman, 162 Miss. 404, 139 So. 159, there was a verdict for $12,000, and the Court, after fully considering the case, and the authorities applicable thereto, held that the verdict was excessive in the amount of $5,000, and directed a remittitur down to $7,000. This case was likewise brought because of an injury to an eye, with consequent loss of sight except to a very limited extent, ability being retained barely to distinguish between darkness and light; the injury prevented dilation and contraction of the pupil of

the eye, resulting in the admission of excessive light into the eye, which caused suffering and pain.

In 46 A. L. R., page 1282, in the casenote, a number of cases will be found in which there were verdicts for loss of, and injury to, eyes in excess of the sum here allowed by the jury, and which were not disturbed by the Court.

We are unable to reverse the case on the ground that the verdict is contrary to the weight of the evidence, or because excessive, on the facts of this case.

Affirmed.