MUTUAL LIFE INS. CO. OF NEW YORK v. BAKER.

(In Banc. Nov. 13, 1944.)

[19 So. (2d) 739. No. 35592.]

Wells, Wells, Lipscomb & Newman, of Jackson, and Louis W. Dawson, of New York, N. Y., for appellant.

440

442

**Nichols & Huff** and **O. B. Triplett, Jr.,** all of Forest, for appellee.

Argued orally by **W. R. Newman, Jr.,** for appellant, and by **O. B. Triplett, Jr.,** for appellee.

**Griffith, J.,** delivered the opinion of the court.

This action was begun in the circuit court by a declaration filed on behalf of appellee demanding judgment against the appellant company on a health insurance contract for total and permanent disability benefits alleged to be due and unpaid on February 1st and March 1st, 1943, at $15 per month, or a total sum of $30 for the two months, together with $1,400 for mental and physical suffering for failure to pay such benefits when due, and for the further sum of $1,500 punitive damages for alleged wilful and fraudulent refusal to make such payments under the proof theretofore submitted in regard to plaintiff's alleged total and permanent disability.

The suit was filed on March 6, 1943. The plaintiff had been regularly employed as a truck driver for the Quartermaster Department of the United States Government at Key Field, Meridian, Mississippi, for the period begin-

ning on July 13, 1942 and ending on September 1, 1942, at $1,200 per annum, and from the said 1st day of September, 1942, until and including August 31, 1943, at $1,320 per annum. The case was tried in September 1943.

It was shown that plaintiff's regular employment prior to 1926 was that of farming. At that time the disease, later to be mentioned, had made its appearance, and he secured employment with the Mississippi Power Company, at Meridian, reading meters, and continued therein until he became disabled to further follow it; and it was shown that when he took the employment at Key Field, covering the period involved in this case, he was unable to do the substantial labor required in either of his said former occupations, but was able to engage in work as a truck driver at Key Field, and to do all the work that was required of him in that employment with entire satisfaction to his employer, so that, as stated, he received an increase of pay after some weeks in that service.

Further of the facts will be later noted, but here it will be mentioned that the policy did not insure against disability to follow his usual occupation, as some such policies have stipulated, but was against disability "to perform any work or engage in any occupation whatever for compensation, gain or profit."

The trial court submitted to the jury the issue as to whether the defendant was liable for the two monthly payments sued for, but declined to submit the claim for special damages on account of mental and physical suffering and for punitive damages. The jury found for the plaintiff in the sum of $30, and a judgment was accordingly entered therefor. Defendant has prosecuted this appeal from such judgment, and the plaintiff has prosecuted a cross-appeal because of the trial court's action in declining to submit to the jury the question as to whether or not the plaintiff was entitled to recover such special and punitive damages.

From the above introductory statement and from the record as a whole, it is disclosed that there were present

in the current, employment the following three factual elements, which we will call factors:

1. The employment was consistent and regular, day by day and month by month, for more than a year. It was not casual or haphazard or undependably intermittent or merely incidental.

2. The employment was such that the employee could and did personally do all the work that was required of him in it, and he was not under necessity of paying out of his compensation for an assistant to do the work so required. It could not be said of him without doing violence to the record that he was unable to perform in any substantial manner the duties required of him in his employment.

3. The compensation was equal to, if not more than he had ever received in any other employment or in his entire life, for an equal period of time. It was not a minor employment, with a compensation so far inferior as compared with previous earnings as to make it unjust to say that there was in reality a compensation worth comparison.

With these three factors present, if the average citizen were asked whether there could be in it a total and permanent disability, the answer would be at once in the negative, and if questioned whether in such a situation there could be any equity in a demand founded upon such a claim, the answer again would be in the negative. And it is to be noted that in the only two cases decided by this Court wherein the affirmative of all three of the stated factors was each definitely shown to be present the claim of total disability was denied. These are Brotherhood of R. R. Trainmen v. Nelson, 166 Miss. 671, 147 So. 661, 148 So. 179, and New York Life Ins. Co. v. McGehee, 193 Miss. 549, 10 So. (2d) 454. In many jurisdictions, as shown by the cases cited by appellant, the courts hold that when the insured is able to, and does, continuously perform all the material and substantial acts of his employment over a prolonged period of time, he will not, at the

same time, be permitted in the face of the facts to maintain that he is totally disabled—that an insured cannot with one hand take money from the insurer on the claim that he is totally disabled, while with the other hand he receives full-time wages from his employer on the implied assertion that he is not disabled.

In this state we have not subscribed to the rigid rule as set out in the last sentence of the foregoing paragraph, and we have allowed in rebuttal the introduction of a fourth factor and have held as in New York Life Ins. Co. v. Bain, 169 Miss. 271, 275, 152 So. 845, that "it is not what a person does . . . but it is the condition in which he is, and whether the activities will seriously endanger his health or life." In that case the insured suffered a second stroke of paralysis and was afflicted with high blood pressure, although he was still able to spend some time each morning looking over his plantation, but his physician testified that so to do was dangerous to his health and jeopardized his life—a conclusion which, as to a man in that condition, would not require a physician to establish. Likewise in Equitable Life Assur. Soc. v. Serio, 155 Miss. 515, 124 So. 485, and Reliance Life Ins. Co. v. Cassity, 173 Miss. 840, 163 So. 508, both of which were cases of tuberculosis, as to which, as said in the Serio case, unless complete relaxation from any fixed employment is observed the disease will inevitably progress and soon cause death, and this, too, is a matter of common knowledge.

There are six fully reported cases other than those above cited in which, during recent years, we have dealt with this question, and the first of these is Metropolitan Casualty Ins. Co. v. Cato, 113 Miss. 283, 74 So. 114, wherein the facts as to what the insured did or was able to do were similar to those in the Bain case, and there the Court gave adherence to the rule mentioned under Factor 2, that although the insured might be able to do some incidental acts in his employment, he would still be totally disabled within the insurance contract if he were unable

to perform a substantial and material part of the acts necessary to the occupation or employment. To the same effect, under its facts, is New York Life Ins. Co. v. Best, 157 Miss. 571, 128 So. 565, and Mutual Benefit Health & Accident Ass'n v. Mathis, 169 Miss. 187, 142 So. 494. The recent case of Columbian Mut. Life Ins. Co. v. Craft, 183 Miss. 234, 185 So. 225, is a striking illustration of that rule and of the effect of Factor 2, above set out. In Metropolitan Life Ins. Co. v. Evans, 183 Miss. 859, 184 So. 426, attention was centered on erroneous instructions and the case is not helpful in our present problem.

This leaves Metropolitan Life Ins. Co. v. Lambert, 157 Miss. 759, 128 So. 750, which was where the insured had suffered a compound fracture of the wrist of a serious character, which had not healed. He obtained employment as a night watchman, the duties of which he could discharge by being seated most of the time. It may be that that case should be catalogued as not falling within Factor 3, and it is justified on the ground that the proof disclosed a case wherein a cure could be had, and wherein the proof as to the necessity of abstaining from all work in order to achieve a cure was clear, positive and definite, but in any event the Court went to the extreme limit to which a case of this kind can be extended.

In that case, and in two or three others, it is broadly said that although an insured may be able to continue to work, nevertheless, under a contract such as this, he will be considered as totally disabled if common care and prudence under the circumstances require him to desist. This is a phrase which, by its generality and want of definiteness, is capable of being understood, and especially by jurors, as bringing within the circle of liability, cases which are not within it when the more precise significance of that term is observed, and the judgment in the present case presents, we think, an illustration of a misunderstanding of what has been meant. We shall undertake, in the light of the experiences which we have had with these cases, to clarify what is meant by the phrase, and

to prescribe the extent of its application, that is to say, what is embraced in Factor 4 when the case is such that the presence of that factor must be proved in order to make out a case of liability. The legitimate and ultimate purpose of insurance of this character is not to provide an investment, but to protect against loss of earning capacity, and the question at last is whether the particular case comes ex aequo et bono within that purpose.

In order to establish the presence of Factor 4 in rebuttal of either one or the other of the first three factors, the burden of proof is upon the plaintiff to show the affirmative of one or the other of the following three issues:

(a) That the affliction or condition of the insured has not become chronic or incurable; that there is real hope of a cure, and that he can be cured only by refraining from the ordinary exertions of any fixed employment; or

(b) If his condition has become chronic or incurable, and there is no real hope, whatever he does, of any substantial improvement, as compared with the condition for or during the period involved in the action, then when able to engage in employment, as the insured was here, he is not disabled within the insurance contract, unless as a result of persistence in the ordinary exertions of any fixed employment, the affliction or condition would, not possibly but probably, seriously and dangerously progress or happen for the worse, and substantially so, as compared with what would happen whether employed or unemployed. Statements (a) or (b) embrace also what is meant by the phrase, "seriously endanger health or life;" or

(c) His affliction or condition is such that the pain and suffering resulting therefrom, either because of the affliction itself or as a result of the employment, is such, as a reasonable and practical proposition, as to be or become unbearable by a person of average or normal fortitude, when, as here, there is no proof that the insured is a person other than of average or normal fortitude. Whether it would be practical, rather than an embarka-

tion upon theory, to admit evidence of a lack of normal will power in the particular insured as an aid to the assertion of total disability is left as an open question.

We have referred to the fact that when factors one to three are present, as in this case, many courts do not allow them to be rebutted by the introduction of Factor 4, and while in this jurisdiction we do not follow these cases, there is due to them, and the logic upon which they stand, the weight that when in such a case the rebuttal is allowed by Factor 4, the proof of that factor ought to be, and must be, by clear, direct, and unequivocal evidence.

In scrutinizing the evidence in the present case, and keeping in mind what has been said, we are at once confronted with the fact that the physician, who was perhaps the main witness for the insured, and had observed him more frequently than any other, furnished him with a certificate, when he applied for this employment, that "applicant is capable of performing duties involving moderate physical exertion," and the proof is undisputed that the employment was the driving of a light truck on improved grounds and ways, and which was by actual experience for only about five miles or fifteen minutes per day, and that during the remainder of the eight-hour day the insured simply sat around on call. The testimony is undisputed that insured was afflicted with arthritis in his left hip joint and lower spine, and had been for more than fifteen years, and that it had become chronic, with no probability of a cure as compared with his condition when he took the employment on or about July 13, 1942; and the medical testimony is undisputed in substance that it would be expected as likely that the condition would progressively grow a little worse as time went on. An X-ray photograph made in 1936 and another made in 1943 were introduced, and when compared by the physician, expert upon the reading of such photographs, he said that they showed that the trouble in these seven years had "progressed a little but not severely," and no attempt whatever was made to show that the little prog-

ress had occurred during the employment rather than during the entire seven years. In fact, the physician declined to express an opinion on that point.

· Here, then, we have demonstrative evidence of the highest order that can be obtained, photographs which impartially speak the truth, that there has been no serious impairment of health during seven years, much less during the shorter period of the employment, and it leaves simply the assertions of the physicians that it would be better that the insured refrain from all work; that it is against him to work, or that work might cause a set back, when the photographs show that, as a matter of fact, no such happened.

This leaves to be considered the insured's testimony that he suffered great pain in the employment, but this is that he suffered at night, and when examined closely it is that this was during the winter months. Yet he says that it had become so severe that he had to quit at the end of August, 1943. Even so, the action here involves only the preceding months of January and February. He had not had to quit then. In the face of all this, we find him by his own admissions making round trips, not a part of his employment, of more than sixty miles one way every week-end, or doubly more mileage than he made in his employment during the week. We may concede that work of any kind by the insured would be, in a measure, painful, but here none among his coworkers or his employers heard of it, and how it could be that five miles or fifteen minutes a day in driving a light truck over improved grounds would substantially add thereto, especially in view of the fact that it was not so painful as to interfere with his traveling 120 miles each week-end, is not explained in this record. Hundreds, not to say thousands, of our people go to their daily tasks in pain, and of many of them physicians could be found who would say that it would be better for them to refrain from all work. Pain in work or as a result thereof, as we have already said, may be or become such as to amount to total

disability, but in our opinion such a case is not shown here by the quality and weight of testimony necessary to establish the affirmative of that issue.

We do not pursue the evidence further, but taking it as a whole, and radiating its interpretation from those parts which are demonstrative in nature, and noting again that we have not a case where a cure can be effected, but one where the progress of the trouble is involved, and that only, we are of the opinion that the evidence is not sufficient to bring the case dependably and safely within the requirement in such a case that it shall show the employment seriously endangered the health or jeopardized the life of the insured, and as to which in order to rebut the inference arising from the presence of the three first factors mentioned, the evidence must be clear, definite and positive.

We are of the opinion that a peremptory instruction as to the action in its entirety should have been granted, and this makes it unnecessary to discuss the other features of the case, except to note again that we have not been dealing with a case as to what was appellee's condition or what his case might be after September 1, 1943, the date when he quit work, but with the months of January and February 1943, during which he was at work.

Reversed and dismissed.

DISSENTING OPINION.

**Smith, C. J.,** delivered a dissenting opinion.

To the statement of facts in the controlling opinion I will add only this: The appellant obtained his employment as a truck driver because of circumstances which in the very nature of things will probably not soon again occur. He was never required by his employer to drive the truck more than five miles per day, and there were "days and days" when he was not called upon by his employer to perform any service whatever in connection

with his employment. He suffered pain at night throughout this period of his employment.

All of the cases heretofore decided by this Court proceed on the theory, in accord with the weight of authority elsewhere, that if the physical condition of the insured in a health and accident insurance policy, similar to the one here in question, is such that in order to effect a cure reasonable care and prudence require that he cease work, he is totally disabled within the meaning of the policy.

There was here evidence and to spare, including that of three physicians, to warrant the jury in finding that (although the appellee drove a truck), during the period of time here involved, in order to effect a cure of his malady reasonable care and prudence required the appellee to cease work.

Except for the evidence that the appellee actually engaged in manual labor, the jury would undoubtedly be permitted to find that he was permanently disabled, within the meaning of the policy. The question then is: Does the fact that he performed this manual labor constitute proof that he was, in fact, not totally disabled from engaging in work within the meaning of this policy? In accord with many authorities elsewhere, all but two of the cases heretofore decided by this Court hold that engaging in manual labor is simply a fact for the consideration of the jury in determining whether the insured was totally disabled from engaging in such work, within the meaning of the policy.

This rule is implicit in, and was fore-shadowed by, Metropolitan Life Ins. Co. v. Cato, 113 Miss. 303, 74 So. 118; and was expressly held in Metropolitan Life Ins. Co. v. Lambert, 157 Miss. 759, 128 So. 750; New York Life Ins. Co. v. Bain, 169 Miss. 271, 152 So. 845; Mutual Benefit Health & Accident Ass'n v. Mathis, 169 Miss. 187, 142 So. 494; Reliance Ins. Co. v. Cassity, 173 Miss. 840, 163 So. 508. It is implicit, although not specifically announced, in other cases decided by this Court. The evidence here, if these cases are to be followed, presented a question for

the determination of a jury, and the court below cannot be held to have erred in refusing to direct a verdict for the appellant.

Brotherhood of Railroad Trainmen v. Nelson, 166 Miss. 671, 147 So. 661, 148 So. 179, and New York Life Ins. Co. v. McGehee, 193 Miss. 549, 10 So. (2d) 454, are in conflict with the above cases, and hold that the performance of substantial manual labor negatives total disability, within the meaning of the policy, and leaves nothing relative thereto for the decision of the jury. I think the rule of the cases first hereinabove cited should be followed, and the court below be held to have committed no error in refusing a directed verdict for the appellant. The compensation, whether little or much, received by the appellant for the work here performed by him, has no bearing on whether he was totally disabled, within the meaning of the policy; and it may not be amiss, though I have left it out of view, to point out that the work in which he actually engaged could not have taxed his physical strength to any great extent.

**Anderson, J.,** concurs in this dissenting opinion.