Appellant sued appellee on a group insurance policy. For benefits due for total disability, in order to recover, the policy involved required insured to show that he:
 * * * has become totally and permanently disabled as a result of bodily injury or disease so as to be prevented thereby from engaging in any occupation or performing any work for compensation or profit, * * *
Appellant had worked for the International Paper Company in Adams County, Mississippi, from 1953 until the summer of 1966 when he was compelled to leave the employment because of his health. He attempted to return to work in 1967 but could not pass his physical examination, and his employment was terminated on February 3 of that year.
The only questions here involved are whether his condition brought him within the provisions of the above quoted portion of the policy, and whether the evidence was sufficient to carry the case to the jury — the court having granted defendant a peremptory instruction at the conclusion of the plaintiff's evidence. Of course, it is well settled that in considering a motion for a peremptory instruction, the court must look solely to the testimony in behalf of the party against whom the directed verdict is requested, and, taking that testimony as true, along with all reasonable inferences which could be drawn therefrom favorable to such party, if such evidence could support a verdict for him, the directed verdict should not be given. Buntyn v. Robinson, 233 Miss. 360, 102 So.2d 126 (1958). There are many cases similarly holding.
The personnel director of International Paper testified that appellant Ezell had worked from May 22, 1953, to February 3, 1967; that he was off a great deal of the time; he had had a ruptured lumbar vertebrae; a pulmonary infection; and a lumbar-sacral syndrome together with arthritis of the lower spine and hips. This was at the first major period of absence. He was next off because of sub-deltoid bursitis with calcification, and he was off again for pulmonary tuberculosis, with right upper lobectomy. Later, he was off due to an acute upper respiratory infection, and, again for the same trouble.
The next absence was because of bursitis of the hip; the next was flu; the next was because of low backache due to degenerative changes in the lumbar spine; and the next was trochanteric bursitis. This was the time of the termination of his employment.
Plaintiff, himself, testified that he could not keep up with his work because of these various afflictions. He testified that his work involved the rolling of heavy rolls of paper, and because of the lung condition, he had to breathe through his mouth, and the more he stirred, the harder he breathed. He said that the older he gets, *Page 892 
the worse his back injury is. He would sometimes get down and have to be carried off the job. Several times he was led, and partly "toted" off the job. On occasions, the first aid nurse carried him home in her car.
He wears a brace on his back. His doctor advised him not to get out of bed and on his feet without it on. He sleeps on a cotton mattress with a board under it. He said that he has bursitis in both shoulders and the left hip, and the doctor has to go in his joints every few months and shoot medicine in his shoulders and hip. He has to take these shots every few months. He says it gets worse the older he gets.
Two doctors testified for plaintiff and they confirmed the various troubles he had.
Dr. J.L. Henderson also told that in removing part of the lung, they removed some of the ribs and that the appellant also has emphysema and cannot take a good deep breath. He testified that the plaintiff's lungs are expanded so that he cannot get a deep breath and said that he could not do as much work as he used to. He further said that Mr. Ezell should be performing light duty, and not the heavy work he was doing. He recommended to the company that Ezell be given a lighter job, but, apparently they had none available.
Dr. Jack H. Phillips, an orthopaedic surgeon, testified that he had examined the man and his testimony fully corroborated the testimony of the other doctor as to what he found; and, in addition thereto, he found that he had enlarged nodules in his back which indicated arthritis, and that the patient had muscle spasm and stiff back on limited motion. He also had crepitus in his knee joint. The doctor said that activity would go a long way toward aggravating the pain and perhaps cause swelling in the knee; that it would also have an adverse effect on his arthritic condition; and that activity aggravates bursitis.
At the conclusion of the plaintiff's testimony, the court sustained a motion for a peremptory instruction by the defendant, hence Ezell's appeal.
It has not been the policy of this State to require that a man be absolutely flat on his back in order to be classified as totally disabled, and he has not been barred from recovery even where he has earned money. Many times it is necessary in order to subsist that the insured undertake to earn some money. In other words, if he should sit on a street corner and sell peanuts and shoe strings, he would, under a strict interpretation of this policy, be barred. And if an insurance company was so disposed, it could delay settlement of his claim to such a point that the patient would be required to take whatever the company offered in order to live. This is not the policy of our Court.
The appellee relies on the case of Mutual Life Insurance Company of New York v. Baker, 197 Miss. 438, 19 So.2d 739 (1944) in which the same policy provision was involved. In the opinion there, the Court discussed the previous decisions of this Court where people were granted total disability even though they were doing some substantial acts of work and even though they were earning money. The decisions in these cases are there summarized and were not overruled. In the Baker case, it appears that the man, at the time for which he claims compensation, was earning more money than he had ever made. The Court thereupon stated that there were present in Baker's present employment three factual elements: (1) His employment was consistent and regular, day by day and month by month. It was not casual or haphazard or undependably intermittent or merely incidental; (2) It was such that the employee could personally do all the work required of him, and it was not necessary for him to pay for an assistant. It could not be said of him without doing violence to the record that he was unable to perform in any substantial manner the duties required of him in his employment; (3) The compensationwas equal to, if not more than he had ever *Page 893 received in any other employment or in his entire life, for anequal period of time. It was not a minor employment, with acompensation so far inferior as compared with previous earningsas to make it unjust to say that it was in reality a compensationworth comparison.
The Court also discussed a fourth factor, which we do not believe is necessary to include here.
In the instant case, the plaintiff testified that with the company he had been making $100 per week. Evidently, there were also fringe benefits, such as group insurance.
His employment had been terminated because of his health and he had taken a job as the pastor of a small church, where his compensation began at $25 per week, and $5 was later added to cover expenses. He was also allowed to live in a house owned by the church, about which we know nothing except that it had seven rooms — whether it was falling down from age, or was new, is not shown by the record.
The appellant also testified that on several occasions he had been unable to discharge his duties and that some of the deacons of the church had performed his duties for him. These circumstances, and particularly that of the third factor, make this a jury issue; whether the compensation received by the insured in his present work is so far inferior, as compared with previous earnings, as to make it unjust to say it was in reality a compensation worth comparison, is one about which reasonable men might differ — whether a reduction from $100 a week to $25 or $30 a week is compensation worth comparison, should be determined by the jury, as well as the question of his physical disability.
The lower court was in error in sustaining the motion for a peremptory instruction, and the case is reversed and remanded for a new trial.
Reversed and remanded for a new trial.
ETHRIDGE, C.J., and PATTERSON, SMITH, and ROBERTSON, JJ., concur.